**Stephenie KNOTTS, Appellant–Petitioner,**

**v.**

**Shannon KNOTTS, Appellee–Respondent.**

**No. 32A05–9710–CV–430.**

Court of Appeals of Indiana.

April 7, 1998.

964

Audrey K. Grossman, Treacy Grossman & Sullivan, Indianapolis, for Appellant–Petitioner.

Maxine T. Bennett, Buck Berry Landau & Breunig, Indianapolis, for Appellee–Respondent.

## OPINION

SULLIVAN, Judge.

Appellant, Stephenie Knotts (Stephenie), appeals the order of the trial court awarding custody of her three children to Shannon Knotts (Shannon), her former husband and natural father of the children.

We affirm in part, reverse in part and remand.

Upon appeal, Stephenie presents six issues, which we restate as follows:

(1) Whether the trial court abused its discretion in awarding custody of the three children to Shannon.

(2) Whether error occurred when the trial court admitted a tape recording of a voice-mail message and transcript thereof prepared by Shannon.

(3) Whether the trial court erred in allowing Shannon to enter his seventy-six page diary into evidence.

(4) Whether the obligation of child support calculated by the trial court was erroneous.

(5) Whether the trial court erred in evaluating the Lilly stock options.

(6) Whether Finding of Fact 26 and Paragraph 16 of the Decree of Dissolution of Marriage are erroneous.

Stephenie and Shannon married on June 6, 1987. Their union produced three children, T.L.K., T.R.K., and T.W.K., the first born out of wedlock. The couple separated in April 1996, and Shannon vacated the family home. Stephenie filed for dissolution of the marriage on April 29, 1996. Stephenie and Shannon shared physical custody of the children during the pendency of the action.

During the marriage, Stephenie was principally responsible for caring for the children. In addition, in order to earn extra money, she attended to elderly boarders who lived in the Knotts' home. Meanwhile, Shannon was consistently employed throughout the marriage, and assisted Stephenie with the care of the boarders and the children.

Approximately six months before the separation, the couple began to experience problems. Specifically, Stephenie testified that Shannon objected to her leaving the house without the children, which hindered her ability to find time for herself. Subsequently, Shannon moved from the home and a female friend moved in with Stephenie to help care for the boarders. The relationship between the women eventually became intimate.

At trial, Stephenie conceded that she engaged in affairs with two men during the marriage. In addition, Shannon testified that Stephenie placed her own interests before that of her children, and often neglected to provide their oldest child, T.L.K., with her medicine when she was in Stephenie's custody. Moreover, Susan Oxfurth, a clinical social worker, diagnosed T.L.K., age 10, with depression and prescribed Prozac. Oxfurth believed that T.L.K.'s depression was principally attributable to "the fact that her mother had been labeled 'gay'...." Record at 820.

### I. CUSTODY DETERMINATION

■ Stephenie contends that the trial court erred in awarding custody of her children to Shannon. I.C. 31-1-11.5-21 (Burns Code Ed. Supp.1996), *repealed by* P.L. 1-1997, § 157,[1] provides that the court, in making a custody determination, shall consider "all relevant factors ... [i]n determining the best interests of the child...." Upon appeal, this court will reverse a child custody determination only if the trial court abused its discretion. *Lay v. Lay* (1987) Ind.App., 512 N.E.2d 1120, 1122.

■ Initially, Stephenie argues that the lower court's Findings of Fact 4 through 10, which relate to the custody determination, are not supported by the evidence. However, we have carefully reviewed the record and conclude that sufficient evidence, independent of the tape recording and diary, supports each of these findings.

In addition, these findings support the judgment awarding custody of the children to Shannon. Based upon the following factors, the trial court did not abuse its discretion in determining that placement with the father was in the children's best interests. First, the court found that Stephenie "failed to demonstrate appropriate stability for child rearing." Record at 114. Second, the court resolved that Stephenie was deficient in caring for her children, frequently forgetting to provide her children with medication and arrange necessary transportation. Finally, the court found that Shannon "demonstrated that the children take precedence over all other aspects of his life, and that he is committed

---

1. For present provision, *see* I.C. 31-17-2-8 (Burns Code Ed. Repl.1997).

to their care and well-being." Record at 115–16.

In response, Stephenie argues that the trial court punished her because of her sexual orientation. In *D.H. v. J.H.* (1981) Ind.App., 418 N.E.2d 286, 293, the court held that "homosexuality standing alone without evidence of any adverse effect upon the welfare of the child does not render the homosexual parent unfit as a matter of law to have custody of the child." In the present case, the evidence was such that without regard to Stephenie's sexual orientation the trial court could reasonably conclude that placement with Shannon was in the children's best interests. However, even if this factor was considered, evidence presented at trial supports the proposition that Stephenie's current relationship impacted negatively upon her oldest child, T.L.K. Specifically, T.L.K. was diagnosed with major depression and prescribed Prozac, based at least in part upon her mother's relationship with another woman.[2]

## II. TAPE RECORDING AND TRANSCRIPT

During trial, Shannon testified that he recorded the following message left by Homer Henderson, Stephenie's minister, for Stephanie on her voice mail:

"(Inaudible) that's alot of malarkey. Okay, I wish Howard would have made his commitment but he said he wouldn't and uh I doubt if he does, sweetheart (Inaudible) but at the time I wouldn't have said what I did if I hadn't thought it was right at the time but two seconds after that it (Inaudible) but I can't get those two seconds back but I can love you two seconds harder and more. So I will and I hope you get to hear this (Inaudible)." Record at 630.

Shannon argued that this recording supported the inference that Henderson and his wife were having an affair.

Upon appeal, Stephenie argues that the trial court erred in admitting the tape recording and transcript of this message because Shannon failed to lay a proper foundation. We agree. In *Lamar v. State* (1972) 258 Ind. 504, 282 N.E.2d 795, 800, the Court held that the proponent of evidence must present the following foundation before a trial court will admit a sound recording:

"(1) That it is authentic and correct;

(2) That the *testimony* elicited was freely and voluntarily made, without any kind of duress;

(3) That all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;

(4) That it does not contain matter otherwise not admissible into evidence; and

(5) That it is of such clarity as to be intelligible and enlightening to the jury." (Emphasis added).

Our research discloses that the only plausible interpretation of the use of the word "testimony" refers to the recorded statement at the time it is admitted into evidence before the trier of fact. *See In re Wood* (1976) 265 Ind. 616, 358 N.E.2d 128, 132. Only to that extent does the statement become "testimony". Therefore, the test requires that the statement be shown to be made freely, voluntarily and without duress.

In the present case, the burden was upon Shannon to establish that the statement was made freely, voluntarily and without duress. Shannon made no such showing.[3] Therefore, the trial court erred in admitting the tape recording and the transcript into evidence.

However, because we hold this error to be harmless, we decline Stephenie's invitation to reverse. The tape recording and the transcript of the voice-mail message were merely cumulative of evidence already presented. Previously, Stephenie testified that Henderson professed his love for her, but she

---

2. However, we acknowledge that the impetus of the child's psychological problems may emanate from Shannon's negative statements about lesbianism. To the extent that Shannon contributed to his daughter's sickness by belittling the mother, such conduct is not condoned.

3. We acknowledge that, absent testimony from the individual whose statements were recorded, the proponent will rarely satisfy this burden. As a result, it is appropriate for our Supreme Court to re-examine, and perhaps clarify, this test.

did not engage in a romantic relationship with him. The tape recording and transcript confirm Stephenie's testimony, but do not provide additional evidence that she was romantically involved with Henderson. As such, though admission of the tape and transcript was improper, Stephenie suffered no prejudice as a result.

### III. SHANNON'S DIARY

■ Stephenie also contends that the trial court improperly allowed Shannon to enter his diary into evidence. The document of which she speaks, a seventy-six page journal prepared by Shannon in anticipation of the divorce, is replete with hearsay and should not have been admitted in its entirety. Moreover, a cursory examination of the diary reveals prejudicial sections which, given the appropriate objection, should have been redacted.[4] However, because Stephenie failed to object during trial upon grounds of hearsay and undue prejudice, she may not now protest. These objections were not properly preserved for appellate review. *See Jones v. Marengo State Bank* (1988) Ind.App., 526 N.E.2d 709, 714–15.

■ Stephenie is permitted to argue only that the trial court improperly admitted the diary because it was not relevant. Ind.Evid. Rule 402. "Relevancy is the logical tendency of evidence to prove a material fact and it is a question within the discretion of the trial court." *Valinet v. Eskew* (1991) Ind., 574 N.E.2d 283, 286. In the present case, Shannon introduced the diary to demonstrate "all the times and dates when Mrs. Knotts stayed out all night. It contains times and dates when she did and did not call the children." Record 633–34. For these reasons, the diary was relevant and its admission was not improper, based upon the specific objection made.

### IV. CHILD SUPPORT CALCULATION

■ Stephenie argues that the trial court erred in calculating her child support obligation. This court will only reverse a child support order if it is clearly erroneous.

*In re Marriage of Lang* (1996) Ind.App., 668 N.E.2d 285, 289. Stephenie asserts four alleged instances of error. First, she contends that there is no basis in fact in Finding 12 that Shannon earns approximately $594.00 per week. Rather, as noted by Stephenie, Shannon provided, pursuant to a verified financial declaration in 1996, that he earned $570 per week. Additionally, she points to a trial court determination that her income constituted fifty-one percent of the joint income and asserts that such determination is inaccurate, given Shannon's income in comparison to her own. However, Stephanie makes no discernable argument that the discrepancy in the figures considered by the trial court impacted her weekly base child support obligation.

■ Second, Stephenie alleges that the trial court's calculation of child support was clearly erroneous because it was premised upon Stephenie providing services to three elderly boarders, though she cared for only two at the time of the order. Child Supp. G. 3(A)(3) provides that "[i]f a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income." Starting in 1992, Stephenie began to provide continuous care to three boarders in her home. Although she cared for only two men at the time of trial, she testified that she would expand to three upon conclusion of the proceedings. Based upon this evidence, the calculation was not clearly erroneous.

Third, Stephenie requests that we examine the trial court's finding that Shannon anticipated an expenditure of $100 per week for work-related child care expenditures. Specifically, if the court based its support calculation upon this finding, Stephenie contends that the order was clearly erroneous because Shannon testified that his mother cares for the children while he is at work. However, as demonstrated in Appendix A of Shannon's brief, the court did not incorporate work-

---

**4.** A trial judge cannot be expected to try a lawsuit for the respective parties. However, the failure to examine this document before allowing it into evidence constituted an open invitation for reversal.

related child care expenses in its calculation.[5]

Fourth, Stephenie argues, and Shannon concedes, that the court incorrectly applied the Six Percent Rule with regard to allocating health care expenditures. *See* Child Supp. G. 3(E) Commentary. We agree and reverse the lower court's order with respect to uninsured health care expenditures. Upon remand, we direct the trial court to order Shannon to pay the first $1,135.68 in uninsured medical and dental expenditures each year, and forty-three percent thereafter. Furthermore, the court should assess Stephenie with fifty-seven percent of uninsured medical and dental expenditures in excess of $1,135.68.

## V. VALUATION OF LILLY STOCK OPTIONS

Stephenie also alleges that the trial court erred in calculating the value Shannon's option to purchase the stock of Eli Lilly and Company (Lilly). On April 22, 1993, Lilly offered its employees, including Shannon, the option of purchasing one-hundred shares of Lilly common stock at $47.06 per share. The stock subsequently split, entitling Shannon to purchase two hundred shares at $23.53 per share. The cost to exercise fully this option would be $4,706.

On April 26, 1996, the date of filing of the Petition for Dissolution of Marriage, the stock apparently traded at $58.125 a share. The value of two-hundred shares was $11,625. Therefore, the value of the option on April 26 was $6,919.[6] However, the trial court estimated the value of the option to be $2,130, based upon Shannon's calculation which included estimated capital gains taxes.

A trial court's valuation of marital assets will only be reversed if it is clearly contrary to logic and the circumstances presented before the lower court. *Hacker v.*

*Hacker* (1995) Ind.App., 659 N.E.2d 1104, 1108. Pursuant to I.C. 31–1–11.5–11.1 (Burns Code Ed. Repl.1987), *repealed by* P.L. 1–1997, § 157,[7] a trial court must consider tax consequences related to the disposition of marital property. However, "the statute requires the trial court to consider only the direct or inherent and necessarily incurred tax consequences 'of the property disposition.'" *Harlan v. Harlan* (1990) Ind., 560 N.E.2d 1246, 1246 (quoting *Harlan v. Harlan* (1989) Ind.App., 544 N.E.2d 553, 555, *affirmed*). Future tax consequences incident to the disposition of stock awarded one party are not a proper considerations before the trial court. *DeHaan v. DeHaan* (1991) Ind. App., 572 N.E.2d 1315, 1327, *trans. denied.*

In the present case, the trial court improperly considered tax consequences incident to the future disposition of the Lilly stock option. As a result, we reverse the property distribution and order the trial court, upon remand, to award Stephenie an additional $2,394.50.[8]

In addition, Stephenie argues that the trial court erred in valuing the option as of the date of filing, rather than the date of the property distribution. In *Quillen v. Quillen* (1996) Ind., 671 N.E.2d 98, 102, our Supreme Court stated that "[t]his court has made clear that the trial court has discretion when valuing the marital assets to set any date between the date of filing the dissolution petition and the date of the hearing." The Court noted its disapproval of the conclusion of another panel of this court that a trial judge abuses his discretion when he selects a valuation date that does not accurately reflect a significant change in the value of the asset during the proceedings. *Id.*

To summarize, *Quillen* provides that a trial court may choose any date within defined parameters in determining the value of an asset. However, we do not believe that this

---

5. The trial court failed to include a detailed explanation of its child support calculation. The absence of a child support obligation worksheet or similar documentation hinders effective appellate review.

6. The calculation: $11,625 (value of 200 shares) − $4,706 (cost to exercise option) = $6,919 (option value).

7. For present provision, *see* I.C. 31–15–7–7 (Burns Code Ed.Repl.1997).

8. As previously noted, the option value on April 26 was $6,919, but the court estimated its worth at only $2,130. Thus, the court erred in valuing the option by $4,789. Because Shannon received the full benefit of the court's original miscalculation, he must now remit one-half of the amount, $2,394.50, to Stephenie.

discretion afforded trial judges is inconsistent with their ability to select a date which would avoid injustice. Therefore, we hold that it is possible for a court to abuse its discretion in picking a date which unjustly fails to account for a significant increase in the value of an asset during the proceedings.

 In the present case, however, we do not confront such issue. The record fails to contain any documentation of the closing price of Lilly stock on the date of the property distribution, and neither party requested that this court take judicial notice of that fact. *See generally Linton v. Linton* (1975) 166 Ind.App. 409, 336 N.E.2d 687, 691, *reh'g denied* (this court may take judicial notice of the market value of shares of stock on any given date). Therefore, we decline to conclude that the trial court abused its discretion in valuing the Lilly stock option as of the date of filing.

### VI. FINDING OF FACT 26 AND PARAGRAPH 16

 Finally, Stephenie, in a three-line argument, contends that Finding of Fact 26 and Paragraph 16 of the Decree of Dissolution of Marriage are erroneous. Both provisions provide:

> "That in the event that the real estate proceeds to either party are inadequate to pay the joint obligations set out above, the other is entitled to a judgment from the former spouse in the amount of deficiency, with judgment interest at Eight Percent (8%) from the date of this Decree." Record at 122, 132.

We construe both provisions as attempts to ensure that the marital assets would be divided fairly and equally. Accordingly, we reject Stephenie's argument that each is contrary to law and "incomprehensible". Appellant's Br. at 26.

The judgment is affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion.

FRIEDLANDER and KIRSCH, JJ., concur.