## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 13 2015, 8:33 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Daniel A. Korban
Zamudio Law Professionals, PC
Griffith, Indiana

ATTORNEY FOR APPELLEE

Tara K. Tauber
Tauber Law Offices
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tod E. Elias,<br>*Appellant-Respondent,*<br><br>v.<br><br>Janet R. Elias,<br>*Appellee-Petitioner.* | July 13, 2015<br><br>Court of Appeals Case No.<br>45A03-1502-DR-46<br><br>Appeal from the<br>Lake Superior Court<br><br>The Honorable Elizabeth F. Tavitas,<br>Judge<br>The Honorable Nanette K. Raduenz,<br>Magistrate<br><br>Cause No. 45D03-1406-DR-418 |

**Kirsch, Judge.**

[1] Tod E. Elias ("Husband") appeals the trial court's division of marital property in the dissolution of his marriage to Janet R. Elias ("Wife"). On appeal he raises three issues, which we consolidate and restate as:

I. Whether the trial court abused its discretion when it valued and divided the marital assets, specifically the manner in which it determined the value of some savings bonds, excluded other savings bonds from the marital estate, and awarded Wife the majority of the liquid, post-tax assets; and

II. Whether the trial court abused its discretion in denying Husband's request for a post-division credit on his pension value.

We affirm.

## Facts and Procedural History

Husband and Wife were married on May 23, 1992, and Wife filed for dissolution of marriage on June 6, 2014. During their twenty-two-year marriage, the couple did not have any children.

At the time Wife filed for dissolution, she earned $27,450.00 per year in wages. Husband earned $30,295.00 per year, not including his pension payments, and approximately $165.00 per week from officiating local sports. Together, they had accumulated a marital estate worth over $1.5 million, which included: Wife's Public Employee Retirement Fund ("PERF") pension valued at $224,778.93; an unencumbered home worth $190,000.00; numerous certificates of deposit ("CD") worth well over $200,000.00; stocks, insurance policies, two vehicles, savings bonds, and personal property, the latter two of which were of disputed value. The largest single asset in the estate was Husband's PERF pension, which an expert valued "at $466,000.00." *Tr.* at 4. By the time Wife filed for dissolution, Husband's PERF had fully vested, and he was receiving a monthly gross payout of $2,058.50.

[5] Following a hearing, the trial court entered a Provisional Order dated July 22, 2014, which provided in pertinent part: (1) Wife shall be awarded sole and exclusive temporary use and possession of the marital residence; (2) Husband shall have until August 2, 2014 to remove himself from the marital residence; (3) the parties shall equally split a savings account worth $36,000.00, in order to effectuate Husband's move; (4) the balance of the parties' financial accounts shall not be touched without joint agreement of the parties; (5) Husband shall be entitled to maintain his PERF payments during the pendency of the action; and (6) each party shall be responsible for the expenses associated with their respective residences. *Appellant's App.* at 18-19. Husband was allowed to remove personal property from the marital residence only to the extent the parties could agree; the remainder of the property was to remain at the marital residence. *Id*. at 18.

[6] On August 19, 2014, the parties, each represented by counsel, participated in a mediation session and entered into a Partial Mediated Settlement Agreement ("mediated agreement"). While the parties could not agree on everything, the mediated agreement reflects they agreed to value Husband's PERF account at $455,871.00, and that Husband would retain the entire PERF account but would give Wife 45% of its value. *Id*. at 35. They also agreed that the remainder of the marital assets would be divided evenly. *Id*.

[7] The parties appeared in court for a final hearing on December 11, 2014, and filed the mediated agreement with the trial court. Evidence was presented by summary presentations of counsel and affirmed by each party. Both parties

presented exhibits reflecting lists of assets (the parties had no debt) to be included in the marital pot.[1] Of the numerous assets listed, both parties assigned each asset the identical value except for the U.S. Savings Bonds.[2] Wife, who believed only twenty-four of the bonds should be marital assets, valued the bonds at $2,074.52, while Husband, who believed that more bonds should be included plus an appreciation of 73.4% interest, valued the bonds at $8,323.20. *Id.* at 58, 64-65.

[8] The parties also presented exhibits with a proposed division of assets that comported with the terms of the mediated agreement, i.e. equal division of all marital property except Husband's PERF, of which Wife was to receive 45% of its value, which amounted to an additional $205,141.95 to Wife.[3] *Id.* at 58, 64-65. Both parties proposed that Wife receive eight out of twelve CDs worth about $144,000.00 and that Husband receive the remaining four CDs worth about $109,000.00 and a savings account worth around $25,000.00. The parties also agreed that Wife would keep her PERF pension worth around $224,000.00, that Wife would get more than $31,500.00 in stock, savings, and

[1] Husband included two assets on his list that were not included on Wife's list—a Christmas club account valued at $340 and a $400.00 check that he had received for services rendered as an umpire. By agreement of the parties during the final hearing, the trial court awarded those assets to Husband and excluded them from the marital pot. *Appellant's App.* at 12.

[2] Husband and Wife also disagreed about the value of personal property, which Husband valued as being worth $30,480.00 more than Wife. However, Husband does not appeal the trial court's determination regarding the personal property.

[3] Because Husband's PERF cannot be divided via Qualified Domestic Relations Order, Wife had to receive additional marital assets that would amount to the value of 45% of Husband's PERF. *Tr.* at 35.

checking accounts, and that each party would keep his or her own vehicle. *Id.* at 58, 64.

[9] The parties' proposed division differed in a couple of respects. Husband wanted Wife to get his life insurance policies worth over $273,000.00, while Wife wanted those policies to be counted among Husband's assets. *Id.* at 58, 64. Additionally, Husband proposed that Wife's assets should include $30,480.00 of personal property and $8,323.20 worth of savings bonds.[4] *Id.* at 58, 64. Each party stated a desire to keep the marital residence.

[10] Husband also maintained that, because the provisional order allowed him to keep PERF payments that he had received during the provisional period, worth $9,740.88, it was improper for the trial court to divide the PERF using the value of $455,871.00 and not give him credit for $9,740.88. *Appellant's Br.* at 20. Husband asserted that this credit would allow him to retain his income during the provisional period, just as Wife had retained her income. *Tr.* at 37. Wife countered that no credit should be issued to Husband because the mediation agreement, which was entered into after the provisional order, set forth that while Husband would retain his PERF, Wife was entitled to 45% of the present value of Husband's PERF, an amount both agreed was $455,871.00. *Appellee's Br.* at 24, 25.

---

[4] Husband valued the personal property as being $30,480.00 more than Wife did, and he valued the savings bonds as being $6,248.68 more than Wife's valuation.

[11]   On January 15, 2015, the trial court entered a Decree of Dissolution of Marriage and attached, as Exhibit A, the division of assets. *Appellant's App.* at 11-16. As to the issues about which the parties disagreed, the trial court made the following pertinent findings. The trial court rejected Husband's proposed valuation of the savings bonds at $8,323.20; instead, finding that the value Wife placed on the savings bonds, $2,074.52, more accurately reflected their value for purposes of the marital estate. *Id.* at 12, 16. The trial court also found that the value of the marital estate, excluding Husband's pension, was $1,104,694.66; therefore, each party was entitled to $552,347.33 in assets.[5] *Id.* Husband's pension was valued at $455,871.00; therefore, Wife's 45% share was valued at $205,141.95 and Husband's share was valued at $250,729.05. *Id.* Pursuant to the mediation agreement: Husband's share of the whole marital estate was $803,076.38, and was distributed in the form of his full pension of $455,871.00 plus $347,205.38 of the listed assets; and Wife's share of the marital estate was $757,489.28, which included the unencumbered home, her PERF account, plus other assets.

[12]   After setting forth the distribution of assets, the trial court specifically stated:

> 14. The parties do not agree on how the assets listed in Exhibit A should be distributed. The Court has considered the parties' respective

---

[5] This number did not include Husband's estimate that the personal property was worth $30,480.00, a number that the trial court found to be speculative and could not be relied on as a fair value of the property. *Appellant's App.* at 13. Instead, the trial court concluded that, unless the parties otherwise agreed, the personal property would be divided equally, with the parties selecting, in alternating turns, an item of personal property. *Id.*

arguments, the parties' concerns regarding the pre-tax investments, and the fact that each party wants the martial residence. In order to effectuate the division of assets within the confines of the parties' stipulations and agreements, the Court finds that division of the assets set forth on Exhibit A is a fair and reasonable division of the marital assets.

. . . .

16. The Court has considered the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such factors that bear on the reasonableness of the award of attorney fees. The Court finds that each party has adequate assets and income, and the financial ability to pay for his or her own attorney fees[6]. The Court finds that there has been no misconduct on the part of one party which has caused the other party to directly incur additional fees.

*Appellant's App.* at 13.

[13] Husband now appeals and, pursuant to his request, the enforcement of the Divorce Decree has been stayed pending appeal.

# Discussion and Decision

[14] In its Decree of Dissolution, the trial court *sua sponte* issued specific findings of fact and conclusions thereon. Accordingly, on appeal, our court will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). In determining whether the findings or judgment are clearly erroneous, we first consider whether the record supports

---

[6] We note that the parties agreed in the mediated agreement to pay their own attorney fees. *Appellant's App.* at 35.

the findings and, second, whether those findings support the judgment. *Crider v. Crider*, 26 N.E.3d 1045, 1047 (Ind. Ct. App. 2015); *Granzow v. Granzow,* 855 N.E.2d 680, 683 (Ind. Ct. App. 2006). Findings are clearly erroneous if there are no facts in the record to support them either directly or by inference, and a judgment is clearly erroneous if the wrong legal standard is applied to properly found facts. *Birkhimer v. Birkhimer,* 981 N.E.2d 111, 118 (Ind. Ct. App. 2012)*.* We will reverse only where the record leaves us firmly convinced that a mistake has been made. *Crider*, 26 N.E.3d at 1047.

## I. Marital Assets

[15] Husband maintains that the trial court abused its discretion when it did not divide the parties' marital assets in a just and reasonable manner. Specifically, he contends that the trial court should have: included more of the savings bonds in the marital pot; used his estimate for the value of the savings bonds, and considered tax implications and future economic circumstances when it granted Wife the majority of the liquid, post-tax assets.

[16] In a dissolution proceeding, the trial court's division of the marital estate is a two-step process. *Estudillo v. Estudillo*, 956 N.E.2d 1084, 1090 (Ind. Ct. App. 2011). First, the trial court determines what property must be included in the marital estate, and second, the trial court must divide the marital property under the presumption that an equal split is just and reasonable. *Id*. (citing Ind. Code § 31-15-7-4, -5). It is well established that all marital property goes into the marital pot for division, whether it was owned by either spouse before the

marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. *Id.* (citing Ind. Code § 31-15-7-4(a)). "This 'one-pot' theory ensures that all assets are subject to the trial court's power to divide and award." *Id.* (citing *Thompson v. Thompson*, 811 N.E.2d 888, 912 (Ind. Ct. App. 2004), *trans. denied*).

## *A. Assets*

[17]     Here, with the exception of certain savings bonds, the parties were in agreement as to what property to include in the marital pot. Wife, who had worked extensively in the banking industry, had purchased numerous savings bonds for herself, her Husband, and relatives on both sides of the family. On the date she filed for dissolution, seventy-nine savings bonds were in her possession. These bonds were introduced during the final dissolution hearing. Each savings bond bore, at most, two names. One of the savings bonds listed only the name of Wife, and twenty-three others listed the names of both Husband *and* Wife. *Appellee's App.* at 1-5, 15-19.[7] The remaining savings bonds either bore the names of Husband *or* Wife and a family member or exclusively the names of two family members. *Id.* at 5-14, 20-30. Wife represented that the parties routinely purchased bonds for family members, held them until they increased

---

[7] On pages 106-35 of the Appellant's Appendix, Husband has included overly dark copies of the savings bonds. It is difficult, if not impossible, to read the names on these savings bonds or the social security numbers associated with the savings bonds. Wife resubmitted those same savings bonds in a lighter form to aid legibility. *Appellee's App.* at 1-31. Therefore, when referring to the savings bonds, we will cite to the Appellee's Appendix.

in value, and then gave them to those named family members as gifts on special occasions. *Tr.* at 10-11.

[18] In addition to the savings bonds, Wife introduced U.S. Department of Treasury spreadsheets, which listed, among other things, the serial number of each bond, the issue date, interest rate, and the Treasury Department's valuation of the savings bonds, if redeemed in August 2014.[8] *Pet'r's Ex.* 3. Wife maintained that since many of the savings bonds were purchased in the names of relatives, and used the social security numbers of those relatives, those bonds would be given to the named family member at the time of dissolution, and should not be considered part of the marital estate. *Tr.* at 11. Thus, while Wife's spreadsheets included the value of all of the bonds, she asserted that the value of the bonds to be included in the marital pot was only $2,074.52 – representing those twenty-four bonds that were owned exclusively by Wife or by both Husband *and* Wife.

[19] Husband disagreed, arguing that each savings bond bearing either Husband's or Wife's name was part of the marital assets,[9] and therefore, Wife's valuation of the savings bonds was incorrect. Husband argued that the trial court should

---

[8] During the hearing, Husband stated that he had received a copy of the bonds, but that he had not seen a valuation of any of the bonds other than the ones owned by the parties jointly. We note that while there is no explanation about why these bonds were not valued as of the date that Wife filed her petition for dissolution of the marriage, Husband does not question the August 2014 valuation date for the twenty-four savings bonds.

[9] Husband conceded that the savings bonds that bore neither Husband's nor Wife's name were appropriately excluded from the marital pot. *Tr.* at 28.

take the face value of the pertinent bonds and add 73.4%, the sum of which Husband calculated as $8,323.20. *Id*. at 29. This prompted the following discussion between Husband's counsel and the court:

> THE COURT: So why did you multiply it times 73.4%?
>
> MR. KORBAN: Because the problem stems from the fact that this value that they gave me only includes bonds that are in both of their names, and not bonds that are in [Husband's] name individually, or [Wife's] name individually,[10] which should be included in part of the marital assets.
>
> So, in order to find out the value of all those bonds together, I looked at the increase percentage of this exhibit that was given to me, which over the period of time that they owned these bonds, there's an increase in value of 73.4%.
>
> THE COURT: I don't know how you got that. What I got in this first one, series number ending 4988. It was a $50.00 bond, interest was $68.32, which interest rate is 4.5 - - 4.50%. How is it you're up to 73%?
>
> MR. KORBAN: . . . So, we're running on the assumption that, roughly speaking, if you take all of the bonds into consideration that should be considered part of the marital asset, based on the information that I was given, and we don't have access to these valuations, that the totality would be an increase of 73.4%, from the face value.
>
> THE COURT: Did you take into consideration the ones that are $100.00 face value and right now they're only $68.00?
>
> MR. KORBAN: That's why we averaged them out. That's why we didn't do it in an individual level. Because some went up, some went down, but as you can see, the majority of them went up, just based on this document - -

---

[10] When Husband refers to a bond being in either Husband or Wife's name individually, it appears he is referring to those bonds that bore either Husband or Wife's name plus the name of a family member.

> THE COURT: Only if they're older than 1995. So, the ones that you are averaging, they're older than 1995?
>
> MR. KORBAN: I would have to check.

*Id*. at 30-31.

[20] After hearing the evidence, the trial court ruled that Wife's valuation of the savings bonds at $2,074.52, which was based on the Treasury Department's printout, was the more accurate value. This conclusion reflected the trial court's determination that only the twenty-four savings bonds – those owned exclusively by one or both of the parties – should be included in the marital pot. Husband contends that the trial court abused its discretion when it excluded from the marital pot additional savings bonds that bore the name of Husband or Wife plus a family member. We disagree.

[21] The evidence supports the trial court's conclusion to include in the marital assets only the twenty-four savings bonds owned exclusively by the parties. The trial court clearly believed that the remaining bonds had been purchased for family members as a gift, were being held by the parties until the bonds increased in value, and would be given to those family members to mark a special occasion. We cannot say that the trial court abused its discretion when it excluded from the marital pot savings bonds that had been purchased as gifts for the parties' family members.

[22] The parties do not dispute that the twenty-four savings bonds were valued at $2,074.52. Therefore, our conclusion that the trial court did not abuse its discretion by including only those twenty-four bonds in the marital estate also supports the trial court's determination that, for purposes of the marital estate,

the bonds had a value of $2,074.52. That being said, we note that, even if additional bonds had been included in the marital assets, the evidence before the trial court did not support Husband's contention that the interest on those savings bonds should have been calculated at a rate of 73.4%. Husband arrived at the 73.4% by improperly relying on the appreciation of older savings bonds, many of which had been purchased before 1995. Most of the remaining savings bonds, however, had been purchased after 2000 and, in some cases, had not yet attained their face value, let alone increase by 73.4%. *Appellant's App*. at 59-63.[11] The trial court did not abuse its discretion in rejecting Husband's claim that the savings bonds increased in value by more than 73%. It was eminently reasonable of the trial court to adopt Wife's valuation, which was based on a spread sheet of values established by the Treasury Department. We find no abuse of discretion in the trial court's valuation of the savings bonds.

### *B. Division*

[23] After determining what constitutes marital property, the trial court must then divide the marital property under the presumption that an equal split is just and reasonable. *Estudillo*, 956 N.E.2d at 1090 (citing Ind. Code § 31-15-7-5). Again, we review whether the trial court abused its discretion. *In re Marriage of Fisher*, 24 N.E.3d 429, 432 (Ind. Ct. App. 2014). An abuse of discretion occurs where

---

[11] We note that Husband claims he could not properly value the savings bonds; however, Wife valued the savings bonds using a public Treasury Department website (http://treasurydirect.gov), which was also available to Husband.

the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

[24] Indiana law outlines that a trial court shall divide the property in a just and reasonable manner by, among other things: dividing the property in kind; setting the property or parts of the property over to one of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper; or ordering the sale of the property under such conditions as the court prescribes and dividing the proceeds of the sale. Ind. Code § 31-15-7-4(b). Husband contends that the trial court abused its discretion when it "failed to properly consider tax consequences," and "failed to consider the current and future economic circumstances of the parties. *Appellant's Br*. at 11, 13.

[25] Indiana Code section 31-15-7-7 provides, "The court, in determining what is just and reasonable in dividing property under this chapter, *shall consider the tax consequences* of the property disposition with respect to the *present and future economic circumstances* of each party." (Emphasis added). This statute, however, requires the trial court to consider only the direct or inherent and necessarily incurred tax consequences of the property disposition. *Knotts v. Knotts*, 693 N.E.2d 962, 968 (Ind. Ct. App. 1998) (citations omitted), *trans. denied*. Husband contends that the tax consequences to him of being given the PERF account are not speculative, but instead, are a direct and inherent result of the trial court's division of assets. *Appellant's Br*. at 13. Specifically, he asserts for the first time on appeal that 17.93% of his PERF account is consumed in taxes, which over his life will equal $81,727.98. *Id.*

Wife argues that Husband waived this argument by not raising the issue in the trial court. In fact, Wife was the one who raised this issue saying:

> Judge, I anticipated it and I was right. They want her to take the pre-tax money. Dr. Furdek [the expert] didn't says it's $466,000.00 pre-tax. He said it's $466,000.00 in real dollars that you would need to invest today to throw off a $2,000.00 a month benefit to [Husband]. They want her to take all pre-tax money. That's not fair. Your honor has to consider the tax implications of a division of assets. And thankfully, these people have lots of liquid cash.

*Tr.* at 46. A party may not advance an argument for the first time on appeal. *See Birkhimer*, 981 N.E.2d at 120 (citing *Grathwohl v. Garrity*, 871 N.E.2d 297, 302 (Ind. Ct. App. 2007) ("If a party does not present an issue or argument to the trial court, appellate review of the issue or argument is waived.")). Thus, we agree with Wife that Husband waived his argument that the trial court abused its discretion by failing to consider the tax consequences of giving Husband his entire PERF account. That being said, as we note below, the trial court specifically stated that it had considered concerns regarding pre-tax investments. *Appellant's App.* at 13.

Husband also maintains that, in its division of the assets, the trial court failed to consider the parties' present and future economic circumstances. Wife listed her gross yearly salary as $27,450.00, resulting in a gross monthly income of $2,287.50. *Appellant's App.* at 141. Husband listed his gross weekly earnings as $582.60 from salary, $478.72 from pension and retirement, and $165.00 from officiating, resulting in a combined monthly gross income of $5,314.05. Husband's monthly income was more than twice that of Wife's. While it is true

that Husband was awarded his pre-tax PERF account, Wife was awarded her pre-tax PERF account, as well as a portion of one of Husband's pre-tax retirement accounts. The accounts awarded to Wife totaled about $250,000.00.

[28] In its Decree of Dissolution, the trial court followed the parties' mediated agreement. It was the parties' joint determination that Husband's PERF account, which Wife's expert valued at $466,000.00, would be valued for purposes of the marital estate at about $10,000.00 less, or $455,871.00. *Tr.* at 4. The parties also agreed that Husband would get his entire PERF account and that Wife would get 45% of its value. This meant that Wife's share was about $205,000.00, and Husband's share was about $250,000.00. Had Wife insisted on both including the extra $10,000.00 in value and dividing the PERF account equally, her share would have been around $233,000.00, i.e. $28,000.00 more than she received. In the Decree of Dissolution, Wife's distributive share of the assets was $757,489.28, and Husband's share was $803,076.38. The trial court specifically stated that it had "considered the parties' respective arguments, the parties' concerns regarding pre-tax investments, and the fact that each party wants the marital residence," as well as "the resources of the parties, their economic condition, [and] the ability of the parties to engage in gainful employment and to earn adequate income." *Appellant's App.* at 13. The trial court did not abuse its discretion by following the parties' mediated agreement and, after considering tax consequences and each party's present and future economic circumstances, dividing the assets as it did.

## II. Reimbursement of PERF Payments to Husband

[29] Lastly, Husband asserts that the trial court abused its discretion by dividing his PERF account worth $455,871.00, but denying his request for reimbursement of the $9,740.88 paid from PERF during the provisional period. A provisional order is temporary in nature and terminates when the final dissolution decree is entered or the petition for dissolution is dismissed. *Mosley v. Mosley*, 906 N.E.2d 928, 929-30 (Ind. Ct. App. 2009) (citing Ind. Code § 31-15-4-14). "The determination of temporary orders in a dissolution proceeding is committed to the sound discretion of the trial court, and it can issue orders for temporary maintenance or support in amounts it deems just and proper." *Id*. at 930 (citing Ind. Code § 31-15-4-8). On appeal, we will consider only the evidence most favorable to the trial court's decision. *Id*. We will reverse only where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*.

[30] Under Indiana law, the issuance of a provisional order is without prejudice to the rights of the parties as adjudicated at the final hearing in the proceeding. Ind. Code § 31-15-4-13. "Unlike a final decree[,] which is entered after either a full hearing on all of the issues or after negotiation and agreement by the parties, a provisional order is only designed to maintain the status quo of the parties." *Fitzgerald v. Travelers Ins. Co.*, 567 N.E.2d 159, 162 (Ind. Ct. App. 1991), *trans. denied*.

[31] Paragraph 7 of the Provisional Order Dated July 22, 2014, provided, "Husband shall be entitled to maintain his pension payments during the pendency of this action." *Id*. at 19. The parties agreed that the total value of Husband's PERF was $455,817.00. Husband contends that this amount included the benefits to be paid to Husband from the date the dissolution was filed, forward. Specifically, he contends that this value included payments made to him during the provisional period. Husband's PERF benefit was $2087.32 per month. During the provisional period, which lasted four months and twenty days, Husband was paid $9,740.88. Husband contends that, "when the trial court divided the assets, it did not consider that $9,740.88 of the total PERF value had already been awarded to Husband." *Appellant's App.* at 20. Accordingly, Husband insists that "in splitting the PERF by percentages based on the $455,817.00 figure, the trial court failed to give Husband credit for the portion of the PERF that it had already given him," an amount to which he had a right under the provisional order. *Appellant's App.* at 20. Husband maintains the trial court should have either reduced the amount of the PERF account by $9,740.88 prior to its division with Wife or should have given him a credit in that amount after the division. We disagree.

[32] We find nothing in the terms of the July 2014 provisional order setting forth Husband's right to a credit of any kind at the final division of property. *Appellant's App.* at 18-19. The trial court ordered the parties to "split the $36,000.00 savings account equally" to effectuate Husband's move from the martial residence. *Id*. at 18. Other than that, all of the parties' assets were

ordered frozen by the trial court. *Id*. at 19. Because one of the parties' assets – Husband's PERF – was already being distributed to Husband on a monthly basis at the time of the provisional hearing, it stands to reason that the trial court specifically delineated that asset in Paragraph 7 of the provisional order and allowed Husband to "maintain" those payments, rather than require him to put them into an account somewhere with the rest of the parties' assets. This allowed the parties to maintain the status quo.

[33] Second, and more importantly, the parties entered into the mediated agreement after the issuance of the provisional order. It was in the mediated agreement that the parties agreed: (1) that Husband's PERF would be valued at $455,871.00, which was about $10,000.00 lower than the value stated by Wife's expert, Dr. Furdek; and (2) that the value of the PERF account would be divided 45% for Wife and 55% for Husband. *Tr.* at 4, 17; *Appellant's App.* at 35. Like the provisional order, the mediated agreement contained no mention of any credit that Husband should receive or wanted to receive regarding his monthly PERF payments. *Appellant's App.* at 34-36. All aspects of the PERF account were dealt with in the mediated agreement; the PERF account was not even included in the list of assets attached to the Decree of Dissolution.

[34] Moreover, beyond the compromised value of the PERF, the 55%-45% division of the value of Husband's PERF, and the equal division of the remaining property, in Paragraph 8 of the mediated agreement, the parties released, waived, and forever relinquished all other claims, rights of dower, inheritance, descent and distribution, and all other right, title,

claim, interest and estate existing by reason of their former relationship as Husband and Wife. *Id.* at 36. Pursuant to the mediated agreement, both parties were released from any additional claims against the property, including the credit that Husband now claims. Based on the evidence most favorable to the trial court's decision, the trial court's failure to provide Husband with his proposed credit for his PERF payments during the provisional period was not clearly against the logic and effect of the facts and circumstances before the court.

[35] Affirmed.

Vaidik, C.J., and Bradford, J., concur.