## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 23 2018, 5:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jonathan A. Watson
Rachel J. Luken
Anderson, Agostino & Keller, P.C.
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas Avery, <br> *Appellant-Respondent,* <br><br> v. <br><br> Laura Mae Avery, <br> *Appellee-Petitioner.* | July 23, 2018 <br><br> Court of Appeals Case No. 71A04-1712-DR-2960 <br><br> Appeal from the St. Joseph Circuit Court <br><br> The Honorable John Broden, Judge <br><br> The Honorable William Wilson, Magistrate <br><br> Trial Court Cause No. 71C01-1503-DR-241 |

**Robb, Judge.**

# Case Summary and Issue

[1] In the midst of a dissolution proceeding, Laura Mae Avery alleged financial distress and requested a provisional order for temporary spousal maintenance from Thomas Avery. The trial court granted the motion and ordered Thomas to pay $500 per month to Laura. Thomas appeals, raising several issues we have consolidated as one: whether the trial court abused its discretion in making the provisional order. Concluding the trial court abused its discretion in ordering Thomas to pay Laura $500 per month, we reverse.

# Facts and Procedural History

[2] Thomas and Laura Mae were separated in 1998, but Laura did not file for dissolution of the marriage until March 2015. It appears no provisional orders were made at the outset. Laura suffered a series of strokes in November 2016 and was out of work for some time. She returned to work for twelve hours per week in March 2017 and was able to increase her hours to twenty per week in September 2017. During this time, she also received Social Security benefits and used her IRA to supplement her income.

[3] The parties appeared for a pre-trial conference on September 5, 2017, at which time a bench trial was scheduled for December 6, 2017. On September 13, 2017, Laura filed a Motion for Provisional Order, alleging:

> 1. That this matter has been pending for 2 years and 5 months.

2. That [Laura] is merely requesting a division of [Thomas']
pension.

3. That [Thomas] has continued to receive his pension since the
date this matter has been filed and [Laura] is under financial
distress after recently having a stroke and having to access her
nominal retirement funds to survive.

4. [Laura] would request that the Court grant her 50% of
[Thomas'] pension while this matter is still pending or [in] the
alternative, a reasonable amount of temporary spousal
maintenance.

Appellant's Appendix, Volume 2 at 19. The trial court held a hearing on

Laura's motion on October 12, 2017. Laura's attorney asserted that Thomas'

income, including both Social Security benefits and retirement benefits, was

$2,811.00 per month and that Laura's income was $1,456.00 per month: "If

you apply the, I guess, strict spousal maintenance guidelines, if you will, with

those numbers, I think [Thomas] would owe approximately $235.00 per month

to [Laura]." Transcript, Volume 2 at 6. Alternatively, Laura's attorney posited

she would be entitled to fifty percent of Thomas' retirement benefit since the

date of filing forty-one months before. Conservatively, he estimated Laura

would be entitled to $4,357.36 from Thomas' retirement benefit. "So I guess

one way or another [Thomas] should pay [Laura] a minimum of $235.00 per

month, maybe $400.00 per month to make up in ten months [sic] time or so the

$4,300.00 that I would say [Laura] is owed at a minimum." *Id.* at 7. Thomas'

attorney asserted his monthly expenses exceed his income and, with respect to

Laura's illness, "it seems the urgency has passed for spousal maintenance" as

her "medical progress has been good" and she's been able to increase her work hours. *Id.* at 9-10. The trial court asked both sides to submit affidavits detailing their income from all sources and their expenses for each month, and took the matter under advisement.

[4] Laura's affidavit showed monthly income of $1,456 from Social Security and her employment, and monthly expenses of $1,673 from twelve categories of expenses, such as rent, car payment, insurance, utilities, groceries, and contributions to her church. Thomas' affidavit showed monthly income of $2,706 from Social Security and his pension, and average monthly expenses of $3,795.84 from sixty-seven categories of expenses, including clothing, attorney fees, charitable donations to several organizations, and home repairs. The trial court then issued the following order:

> [Laura's] monthly income is reported to be $1,456. Her monthly expenses are reported to be $1,673. As a result, each month she is $217 in the red. [Thomas'] monthly income is reported to be $2,706. The Court determines that [Thomas'] monthly expenses are $1,808. Thus, [Thomas] has a monthly surplus of $898.

> In order to assist [Laura] with her ongoing expenses each month, [Thomas] is ordered to pay to [Laura] the sum of $500 per month beginning December 1, 2017. The issue of retroactivity is deferred. These payments may be, but are not guaranteed to be, treated as distributions of the marital estate.

Appellant's App., Vol. 2 at 10-11 (footnote omitted). The trial court explained that although it did not believe Thomas was "artificially inflating his monthly expenses," it disregarded some expenses:

> Some of the expenses (such as donations to charitable organizations) are commendable, but they will not be counted among the necessary expenses. Other expenses (such as the cost of construction at [Thomas'] residence) are more properly considered as part of an annual expense but not an actual *required* monthly expense.

*Id.* at 10-11 at n.1. After the order was entered, the December trial date was continued. Thomas now appeals.

# Discussion and Decision

## I. Standard of Review

We begin by noting that Laura has not filed a brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for the appellee. *Barton v. Barton*, 47 N.E.3d 368, 373 (Ind. Ct. App. 2015), *trans. denied*. Instead, we apply a less stringent standard of review and may reverse the trial court if the appellant establishes prima facie error. *Id.* In this context, prima facie error means "at first sight, on first appearance, or on the face of it." *Id.*

A trial court has broad discretion in issuing provisional orders for temporary maintenance or support. *Mosley v. Mosley*, 906 N.E.2d 928, 930 (Ind. Ct. App. 2009); *see* Ind. Code § 31-15-4-8(a) ("The court may issue an order for temporary maintenance or support in such amounts and on such terms that are just and proper."). A provisional order is temporary in nature. Ind. Code § 31-15-4-14 (stating such an order "terminates when . . . the final decree is

entered"). Thus, we give great deference to the trial court's decision in provisional matters because it is making a preliminary determination on the basis of information that is not yet fully developed. *Mosley*, 906 N.E.2d at 930.

## II. Provisional Order of Maintenance

[7] A provisional order, in place only during the pendency of the proceedings, is designed to preserve the status quo. *Priore v. Priore*, 65 N.E.3d 1065, 1074 (Ind. Ct. App. 2016), *trans. denied*. In a typical dissolution scenario, the parties have been living together and sharing resources and expenses until very near the date of separation. Maintaining the status quo in such a situation may require one party to pay temporary maintenance to the other until the parties' marital estate is fully known and finally distributed even when spousal maintenance after the dissolution would not be appropriate. *See, e.g.*, *Mosley*, 906 N.E.2d at 929-30 (affirming provisional order that wife retain possession of marital residence and husband be responsible for one-half of mortgage obligation; parties were married in 2000, separated in September 2008, and provisional order was entered in November 2008). Here, however, Thomas and Laura separated in 1998, although Laura did not file for dissolution until 2015, and she did not request a provisional order until 2017.

[8] The record is sparse and does not disclose how long Thomas and Laura had been married prior to separating, let alone reveal how they handled their financial arrangements before or since. The record does reveal that Laura "delayed asking for help . . . because she was using a marital asset, her IRA, to

supplement her income," but the IRA is now closed. Tr., Vol. 2 at 10. In addition, the parties' affidavits reveal no shared expenses. From this limited information, it appears the parties were financially independent of one another. It is unfortunate that Laura suffered a health crisis that impacted her ability to work and regrettable that she had to use an asset such as her IRA to supplement her income. But the status quo appears to be that Thomas and Laura were each handling their own incomes and expenses without contribution from the other for a significant period of time. Rather than preserving the status quo pending a final determination, the trial court's provisional order upends the stasis that has prevailed between the parties for many years.

[9] Again, the issuance of a provisional order for maintenance is within the trial court's discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances before the court. *See Mosley*, 906 N.E.2d at 930. Here, the trial court ordered Thomas to pay Laura $500 per month "in order to assist [her] with her ongoing expenses each month." Appellant's App., Vol. 2 at 11. An order of temporary maintenance may have been "just and proper" in order to help alleviate Laura's financial distress until the parties' property could be finally distributed. However, the trial court did not attempt to preserve, as closely as possible, the status quo between the parties in issuing its order. Instead, the trial court over-compensated Laura at Thomas' expense, first by disregarding some of the expenses Thomas affirmed were true and accurate, and then by ordering Thomas to pay Laura more than twice her monthly shortfall.

[10]     As we have already stated and as the dissent points out, the record here is sparse. But it was Laura's burden as the proponent of the motion to prove that a provisional order in a given amount would be "just and proper" under the circumstances. What *is* in the record shows the parties have been long-separated, and it appears they also have been long-self-supporting. What is *not* in the record is any evidence that Thomas provided support to Laura during their lengthy separation or that Laura requested support from him or pursued other avenues such as disability payments prior to seeking this provisional order. Both parties appear to be in terrible financial straits. Although we might have affirmed an order awarding a smaller sum more commensurate with the parties' situations, Thomas has met his prima facie burden of showing on appeal that the trial court's order that he pay Laura $500 per month is against the logic and effect of the facts and circumstances in this case.

[11]     This conclusion, however, does present a conundrum: what relief can we provide under the circumstances of this case? Given the parties' relative economic circumstances, we cannot rectify the damage done – Thomas may have been unable to meet his expenses in order to satisfy the trial court's order these past six months, and Laura's precarious financial situation would not allow repayment of sums ordered in error. Unfortunately, we can provide only prospective relief in the form of reversing the trial court's order and ending Thomas' obligation to make further payments. We also direct the trial court's attention to the fact that any disparity or inequity in a provisional order *can and should be adjusted* in the trial court's final order. *Mosley*, 906 N.E.2d at 930.

# Conclusion

The trial court erred in provisionally ordering Thomas to pay $500 per month to Laura.  The order of the court is reversed.

Reversed.


Najam, J., concurs.

Altice, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas Avery,

*Appellant-Respondent,*

v.

Laura Mae Avery,

*Appellee-Petitioner.*

Court of Appeals Case No.
71A04-1712-DR-2960

**Altice, Judge, dissenting.**

[14]     I cannot agree that the trial court abused its broad discretion by granting temporary maintenance to Laura. The barren record before us does not establish how long the parties were married before their physical separation in 1998 or why there was a delay of nearly seventeen years before either party filed for dissolution. More importantly, there is no indication of the parties' financial situations during the marriage or the years of separation. All that can

be gleaned from the record is that the parties appeared to be financially independent of one another at least during the dissolution proceedings, which commenced in March 2015.

[15] While the proceedings dragged on, Laura suffered catastrophic medical issues beginning in November 2016. This left her unable to work for many months and then only able to work part-time, requiring her to supplement her income with a marital asset – her IRA – to meet monthly expenses. In September 2017, Laura filed a request for temporary maintenance after her IRA had been depleted and she could no longer meet her monthly expenses.

[16] The status quo at the time the dissolution petition was filed might well have been that the parties were independently handling their own income and expenses. Laura's ability to do so, however, was drastically and unexpectedly altered during the lengthy dissolution proceedings. In other words, the status quo shifted.

[17] Ind. Code § 31-15-4-8(a) grants trial courts the discretion to issue an order for temporary maintenance "in such amounts and on such terms that are just and proper." In my opinion, an award of temporary maintenance was clearly "just and proper" under the circumstances presented.

[18] Moreover, with respect to the amount of the payments, Thomas argues only that the trial court abused its discretion in determining the parties' monthly expenses, not that the award should be limited by Laura's shortfall. Specifically, Thomas noted that the trial court allowed Laura's contribution of

$120 to her church, yet denied his claimed charitable expenses of $80 per month. Thomas vaguely labeled this monthly expense as "Veterans groups/law enforcement org/misc org/foundations/charities/horse rescue". *Appendix* at 13. While the trial court treated the parties' purported charitable expenses differently, I believe this was within the trial court's discretion.[1]

---

[1] The majority states that the trial court over-compensated Laura, in part, by disregarding some of the expenses Thomas affirmed were true and accurate. The trial court, however, was not obligated to accept all of Thomas's claimed expenses, which totaled nearly $3800 (more than twice Laura's) and, in addition to basic expenses, included debt (credit card payments and attorney fees totaling over $700 per month), structural work on his house ($600 per month), and nominal expenses such as Netflix, Amazon Prime, books/magazines, fitness, cookware, bath linens/non-slip safety mats, and entertainment.