

FILED

Dec 14 2016, 7:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael H. Michmerhuizen
Barrett McNagny LLP
Fort Wayne, Indiana

Cornelius (Neil) B. Hayes
Hayes & Hayes
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Nicholas J. Hursh
Edward E. Beck
Shambaugh, Kast, Beck &
Williams, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Marriage of:

Mark A. Del Priore,

*Appellant-Respondent,*

v.

Jill E. Del Priore,

*Appellee-Petitioner.*

December 14, 2016

Court of Appeals Case No.
02A03-1603-DR-605

Appeal from the
Allen Superior Court

The Honorable
Charles F. Pratt, Judge
The Honorable
Lori Morgan, Judge Pro Tempore
The Honorable
Sherry A. Hartzler, Magistrate

Trial Court Cause No.
02D07-1307-DR-976

**Kirsch, Judge.**

[1] Mark A. Del Priore ("Husband") appeals the trial court's decree of dissolution ("the Decree") of his marriage to Jill E. Del Priore ("Wife") and its distribution

of the marital estate. Husband raises several issues on appeal, which we restate as:

> I. Whether the trial court abused its discretion in its valuation of the TD Ameritrade account because the trial court's findings were not supported by the evidence;

> II. Whether the trial court abused its discretion in not excluding certain payments from the marital estate that were made by Husband for the benefit of the parties and their children;

> III. Whether the trial court abused its discretion in ordering the payment of graduate school expenses;

> IV. Whether the trial court abused its discretion in ordering Husband to pay 65% of the educational expenses of the children;

> V. Whether the trial court abused its discretion in its valuation of an investment when the evidence did not support the valuation;

> VI. Whether the trial court abused its discretion in making its property distribution because it failed to consider the tax consequences of the property division;

> VII. Whether the trial court abused its discretion when it awarded Wife 55% of the marital estate; and

> VIII. Whether the trial court abused its discretion when it ordered Husband to pay a portion of Wife's attorney fees.

We affirm in part, reverse in part, and remand.

# Facts and Procedural History

[3] Husband and Wife were married on June 18, 1988, and three children were born of the marriage, Austin, Tyler, and Alyssa. At the time of the final hearing in this case, Austin was twenty-two years old, Tyler was twenty years old, and Alyssa was eighteen years old.

[4] Husband graduated with a bachelor's degree from Indiana University-Bloomington and then attended the University of Iowa, where he received his MBA. Wife also graduated with a bachelor's degree from Indiana University-Bloomington; she then attended Indiana Purdue University Fort Wayne ("IPFW") for her master's degree. After the parties got married, Wife moved to Iowa and worked full-time as a teacher while Husband finished his MBA. When Husband completed his MBA, the parties returned to Fort Wayne, Indiana. Wife worked in a teaching position with Fort Wayne Community Schools, and about six months after moving to Fort Wayne, Husband became employed with Lincoln Life Insurance Company.

[5] In 1994, the parties' second child was born, and Wife stayed home full-time for approximately ten years. Husband later began employment with Insurance and Risk Management and eventually became a part owner. Wife went back to teaching part-time and, in approximately 2006, returned to working full-time as a teacher. At the time of the final hearing, Wife was employed as a special education teacher at Carroll Middle School, and her income, according to the Child Support Obligation Worksheet, was $1,090 per week.

[6] In 2002 or 2003, Insurance and Risk Management was sold to Old National Bank ("ONB"), and Husband received approximately one million dollars in exchange for his partnership interest. After the sale of the business, Husband became employed by ONB, where he is involved in insurance sales. Husband's income fluctuates from year to year based upon his performance, and at the time of the final hearing, his income for child support purposes was $2,053 per week. Husband earned significantly more in income than Wife during the marriage, with his pay generally being more than twice what Wife made. In 2003 or 2004, Husband opened a TD Ameritrade account ("TD account"), which included a stock account and money market accounts. During the marriage, Husband secured and was the beneficiary of a life insurance policy insuring one of his partners, which resulted in $500,000 in insurance benefits being deposited into the parties' TD account.

[7] At the beginning of the marriage, Wife took care of the finances for a short period of time, but Husband later began taking care of the parties' finances and continued for the length of the marriage. Wife had her paycheck direct deposited into the parties' joint checking account and continued to do so until October 2014. At that time, Wife withdrew $15,000 and opened a new account. Husband continued to deposit his paycheck into the joint account after this withdrawal by Wife.

[8] Wife filed a petition for dissolution of marriage on July 16, 2013. The trial court entered an order enjoining the parties from transferring, encumbering, concealing, selling, or otherwise disposing of any joint property of the parties or

asset of the marriage except in the usual course of business or for the necessities of life, without the written agreement of both parties or the permission of the trial court. *Appellant's App*. at 3.

[9] No funds were disbursed from the TD account in 2013. During 2014, Husband withdrew funds totaling $470,000 from the TD account and placed the funds in the parties' joint checking account. Prior to discovery in the dissolution action, Wife was not aware of these withdrawals. Husband paid many extraordinary expenses with the funds withdrawn from the TC account, including paying taxes for 2013 and 2014, college payments for the children, and credit card bills. However, approximately $93,344 of the funds withdrawn from the TD account was not accounted for, although Husband claimed that the entire $470,000 was exhausted by marital expenses. Before the final hearing, Husband and Wife agreed to divide the remaining funds in the money market portion of the TD account. Husband received $621,000, and Wife received $601,000.

[10] Husband was the sole investor for the parties during their marriage and did not routinely discuss investments with Wife. One of Husband's investments was in a startup orthopedic company, Biopoly. After discussing it with Wife, Husband invested $50,000 in Biopoly. Prior to the Decree, the parties equally split the units in Biopoly. Sometime in 2011, Husband loaned $292,000 of the parties' joint funds to RAINS Investments, LLC ("RAINS") without discussing with Wife. RAINS is a record label that has one musical artist. Husband owns fifty units of RAINS and is a 50% owner. Although Husband referred to the loan as a unit acquisition, it was listed as a loan for tax purposes by the IRS, and

RAINS, itself, showed that the $292,000 was a shareholder loan payable to Husband. At the time of the final hearing, RAINS had not paid back the loan. Husband estimated the value of RAINS to be approximately $40,000 based on anticipated royalty income for the twelve months following the final hearing. *Tr*. at 147. At the final hearing, Husband offered to give Wife the units in RAINS for a credit of $40,000 or to split the units fifty-fifty.

[11] At the time of the final hearing, the parties' oldest child, Austin, had graduated from Butler University ("Butler"), their middle child, Tyler, was attending IPFW, and their youngest child, Alyssa, had graduated from high school and planned to attend Butler. Husband testified that if the parties had remained married, they would have agreed to pay Alyssa's tuition in an equivalent amount to that of an in-state public school. *Id*. at 166. The parties had paid for Austin's college expenses at Butler, less scholarships received, which made the cost of Butler close to what it would cost to attend Indiana University. Alyssa was admitted to the physician's assistant program at Butler, which is an auto advance program that takes six years to complete and results in a bachelor's and a graduate degree. Her college expenses to attend Butler were expected to be approximately $52,616 per year, less grants in the amount of $13,400, for a net cost of $39,216 per year. *Pet'r's Ex*. 2.

[12] At the final hearing, Wife testified that she believed a 55/45 division of the marital estate was fair and equitable because, historically, Husband had a higher earning potential throughout the marriage. *Tr*. at 65-66. Husband earned $173,323 in 2011 and $148,656 in 2012. In 2014, Husband earned

$97,111, and Wife earned $50,937 according to their tax return. On November 30, 2015, the trial court issued the Decree, dividing the marital estate 55/45 in favor of Wife. Husband filed a motion to correct error, which was denied by the trial court, with the exception of a typographical error. Husband now appeals.

## Discussion and Decision

[13] Husband challenges the trial court's division of the marital property. Technically, however, he appeals from the denial of his motion to correct error. This court reviews a trial court's ruling on a motion to correct error under an abuse of discretion standard. *Wortkoetter v. Wortkoetter*, 971 N.E.2d 685, 687 (Ind. Ct. App. 2012). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. *Id.*

[14] The motion to correct error addressed the trial court's division of marital property, which is a matter committed to the sound discretion of the trial court. *Wanner v. Hutchcroft,* 888 N.E.2d 260, 263 (Ind. Ct. App. 2008). A party challenging the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *Id.* Even if the facts and reasonable inferences permit a conclusion different from that reached by the trial court, we will not substitute our judgment for that of the trial court unless its decision is clearly against the logic and effect of the facts and circumstances before it. *Perkins v. Harding,* 836 N.E.2d 295, 299 (Ind.

Ct. App. 2005). We consider only the evidence favorable to the judgment and we do not reweigh the evidence or reassess witness credibility. *Id.* In addition, we will not set aside the findings or judgment unless clearly erroneous. *Elkins v. Elkins,* 763 N.E.2d 482, 484 (Ind. Ct. App. 2002).

## I. Valuation of the TD Account

[15] Husband argues that the trial court abused its discretion in its valuation of the TD account when it failed to include $93,344 in the account's valuation. The trial court has broad discretion in ascertaining the value of property in a dissolution action, and its valuation will only be disturbed for an abuse of that discretion. *Trabucco v. Trabucco*, 944 N.E.2d 544, 557-58 (Ind. Ct. App. 2011), *trans. denied.* An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* at 558 (citing *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind. 1996)). A trial court does not abuse its discretion if its decision is supported by sufficient evidence or reasonable inferences therefrom. *Id.* When reviewing a trial court's valuation decision, we will not reweigh evidence, but will consider the evidence in a light most favorable to the judgment. *Id.*

[16] Husband contends that it was an abuse of discretion for the trial court to find that he failed to account for $93,344 of funds from the TD account and to not include that amount in its valuation of the TD account. He asserts that Respondent's Exhibit E ("Exhibit E") demonstrated expenses in the amount of approximately $92,451 against the unaccounted for expenses of $93,344 and

that the trial court erred when it found that Exhibit E did not properly account for the $93,344. Husband further claims that Wife's Petitioner's Exhibit 4 did not support the trial court's findings, and the trial court's reliance on it was an abuse of discretion.

[17] The trial court made the following findings in the Decree:

> 38. Commencing in 2014, [Husband], without [Wife's] knowledge or consent, withdrew substantial amounts from the TD [account]. From January 16, 2014 to November 24, 2014, [Husband] withdrew $470,000 from the account. [*Pet'r's Ex*. 3]. These funds were used in part for payment of what could be considered extraordinary expenses of the marriage including income taxes, home repair, college expenses, and family credit cards. The total of these extraordinary expenses account for $376,656 of the funds withdrawn, leaving $93,344 of said distributions unaccounted for.

> 39. [Husband] has offered Respondent's Exhibit E to account for the above distributions. However, the Exhibit shows payments made in 2013, prior to the withdrawals in 2014, or show payments made which were not extraordinary in that they should have been paid out of, and historically had been paid out of, the parties' income, for example, mortgage payments and payments on Jill's car loan.

*Appellant's App*. at 18.

[18] As the trial court found, the evidence presented showed that Husband, unbeknownst to Wife, withdrew funds totaling $470,000 from the TD account during the time period of January 16, 2014 to November 24, 2014. *Pet'r's Ex*. 3. Although the majority of those funds were accounted for through the payment

during the relevant period of time of expenses, evidence was presented that funds in the amount of $93,344 were not accounted for in these extraordinary expenses. *Pet'r's Ex.* 4. Husband's Exhibit E purported to show expenses that accounted for the $93,344; however, it only showed expenses totaling approximately $92,451, and most of the expenses listed were made outside of the relevant time period. Specifically, Husband listed expenses for furnace replacement, a new roof, and a home automation upgrade for the primary residence. *Resp't's Ex.* E. The evidence showed, however, that these expenses were all paid in 2013, prior to the first withdrawal from the TD account in January 2014. *Tr.* at 207-08, 210; *Resp't's Ex.* A, Item 3.1. Additionally, the other expenses listed in Exhibit E were for mortgage payments for the primary residence and payments of Wife's car loan. Many of these expenses occurred outside of the relevant time period, either prior to January 16, 2014 or after November 24, 2014, and were expenses historically paid out of the parties' joint account and not extraordinary expenses in that they should have been paid out of the TD account.[1] Viewing the evidence in a light most favorable to the judgment, we conclude that the trial court did not abuse its discretion when it refused to give Husband credit for the $93,344 in expenses that the court found to be unaccounted for. The trial court's decision was supported by sufficient

---

[1] The evidence presented showed that no withdrawals were taken out of the TD account in 2013, and all mortgage and car loan payments were able to be paid out of the parties' joint account. *Pet'r's Ex.* 12.

evidence, and Husband's argument is merely a request that we reweigh the evidence. *Trabucco*, 944 N.E.2d at 558.

## II. Payments by Husband

[19] Husband contends that the trial court abused its discretion when it failed to give him a credit for payments he made benefitting the family during the pendency of the dissolution proceedings. The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of that discretion. *Troyer v. Troyer*, 987 N.E.2d 1130, 1139 (Ind. Ct. App. 2013), *trans. denied*. We may not reweigh the evidence or assess the credibility of the witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

[20] Husband argues that it was an abuse of discretion for the trial court to not give him a credit against his equalization payments to Wife for certain payments he made while the dissolution proceedings were pending and after the parties split their joint account, totaling $48,719. He asserts that the payments were made for household expenses and that the trial court erred in finding that these payments were gratuitous. Specifically, he contends that many of the payments were for the primary residence and for the children's educational expenses, and he should receive a credit for such payments.

[21]     The trial court made the following findings pertinent to Husband's request for a credit for payments he made after the parties' joint account was split:

> 60. [Husband] seeks a credit for payments made by him after the parties divided their bank account on October 1, 2014. The total amount of payments made by [Husband] is in the amount of $48,719 for which he seeks a credit against his equalization payment in the amount of $24,360. [*Resp't's Ex*. A, Item 2.1].

> 61. No Provisional Order has been entered in this case identifying the obligations of the respective parties for the payment of the ongoing marital obligations. Further, a review of [Husband's] Exhibit shows that many of the expenses for which he seeks a credit were for child-related expenses for Austin and Tyler, both of whom are emancipated for purposes of support. [Husband's] request for a credit for the payments outlined on [sic] his Exhibit is denied in that, in the absence of a Provisional Order, such payments are considered to have been voluntarily given.

*Appellant's App*. at 21-22.

[22]     A provisional order is designed to maintain the status quo of the parties during the dissolution proceedings. *Mosley v. Mosley*, 906 N.E.2d 928, 929 (Ind. Ct. App. 2009). It is an interim order that terminates when the final dissolution decree is entered. *Id*. at 930 (citing I.C. § 31-15-4-14). "Any disparity or inequity in a provisional order—can and should—be adjusted in the trial court's final order." *Id*.

[23]     As the trial court found, no provisional order was entered in the present case to assign the payment of certain marital expenses while the dissolution

proceedings were pending.[2]  Therefore, there was no order put in place to maintain the status quo of the parties during the dissolution proceedings.  The majority of the expenses for which Husband requested a credit were on behalf of Austin and Tyler, who were both over the age of nineteen and emancipated at the time.  The duty to support a child ceases when the child becomes nineteen.  Ind. Code § 31-16-6-6(a).  Therefore, any payments on behalf of the emancipated children were gratuitous, and no credit was required.  The rest of the expenses for which Husband requested a credit were either education-related or medical-related expenses for the children, expenses for the primary residence, or expenses for a storage unit owned by the parties.  Here, no provisional order was entered, and Husband likely, as the party with higher earning ability, would have been ordered to pay many of these household expenses provisionally during the dissolution proceedings.  In light of the trial court's broad discretion in the division of the marital estate, we conclude that the trial court did not abuse its discretion in not granting Husband a credit against his equalization payment.

## III. Graduate School Expenses

[24]    Husband claims that the trial court abused its discretion when it ordered the parties to pay for educational expenses beyond a bachelor's degree for Alyssa.

---

[2] Although no provisional order was issued in this case, the trial court did issue an order enjoining the parties from transferring, encumbering, concealing, selling, or otherwise disposing of any joint property of the parties or asset of the marriage except in the usual course of business or for the necessities of life, without the written agreement of both parties or the permission of the trial court.  *Appellant's App*. at 3.

We review a trial court's decision regarding the payment of post-secondary educational expenses for an abuse of discretion. *Hirsch v. Oliver*, 970 N.E.2d 651, 662 (Ind. 2012); *Snow v. Rincker,* 823 N.E.2d 1234, 1237 (Ind. Ct. App. 2005), *trans. denied.* An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court, or the reasonable inferences drawn therefrom. *Hirsch*, 970 N.E.2d at 662.

[25] Husband contends that the trial court abused its discretion in ordering the parties to be responsible for Alyssa's graduate school expenses. He asserts that the Indiana Supreme Court recently held that the term "postsecondary" in Indiana Code section 31-16-6-2 does not include graduate school and that Alyssa's chosen degree program includes a graduate degree, for which the parties should not be responsible to pay the expenses. Therefore, Husband maintains that it was an abuse of discretion for the trial court to order any payment beyond a bachelor's degree. We agree.

[26] Indiana Code section 31-16-6-2 provides that the child support order or educational support order may include, where appropriate:

> (1) amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:
>
> (A) the child's aptitude and ability;
>
> (B) the child's reasonable ability to contribute to educational expenses through:

(i) work;

(ii) obtaining loans; and

(iii) obtaining other sources of financial aid reasonably available to the child and each parent; and

(C) the ability of each parent to meet these expenses.

Ind. Code § 31-16-6-2(a)(1). Therefore, under section 31-16-6-2, a trial court can order parties to pay for educational expenses for postsecondary education. In *Allen v. Allen*, 54 N.E.3d 344 (Ind. 2016), our Supreme Court recently defined the word "postsecondary" as it is used in Indiana Code section 31-16-6-2 and held that the term "does not include graduate and professional school expenses." *Id*. at 349. The Supreme Court went on to state that, although it was holding that the statutory language excludes professional and graduate programs, it was not "our intent to limit the trial court's ability to order divorced parents to pay for education that is less than a baccalaureate degree." *Id*. at 348 n.1. The Court's opinion was only meant to limit "payment of educational expenses beyond a baccalaureate degree." *Id*.

[27] In the present case, the trial court ordered the parties "to pay the costs of Alyssa's post-high school education expenses at Butler . . . for her to obtain a six (6) year degree as a physician's assistant." *Appellant's App*. at 23. The evidence showed that Alyssa had been admitted to the physician's assistant program at Butler, which is an auto advance program that takes six years to

complete and will result in a bachelor's and a graduate degree. *Tr.* at 43. Pursuant to our Supreme Court's decision in *Allen*, we find that the trial court abused its discretion in ordering the parties to be responsible for paying for Alyssa's education expenses beyond a bachelor's degree. We, therefore, reverse this portion of the Decree and remand to the trial court to amend the Decree to reflect that the parties are ordered to pay only for the portion of Alyssa's educational expenses that pertain to her obtaining a bachelor's degree.

## IV. Division of Educational Expenses

[28]    Husband argues that the trial court abused its discretion when it ordered him to pay 65% of the educational expenses for the children. An appellate court reviews a trial court's decision to order the payment of post-secondary educational expenses for an abuse of discretion. *Hirsch*, 970 N.E.2d at 662 (citing *Carr v. Carr,* 600 N.E.2d 943, 945 (Ind. 1992)). Accordingly, we will affirm the trial court unless its decision is against the logic and effect of the facts and circumstances before the trial court. *Id.*

[29]    Husband contends that the trial court's apportionment of college expenses was an abuse of discretion. He claims that the trial court's order was in error because it was based on his former earning ability despite his assertion that his earnings are declining and because the trial court had already used his past earning ability to justify a deviation from the presumptive equal division of the marital estate. Husband next alleges that the trial court failed to consider the testimony by the parties that they had already saved for the children's education

through investments contained in the marital estate and that his portion of the marital estate was inflated with little liquid assets and a requirement to pay a large cash equalization to Wife.

[30] In the present case, the evidence showed that there was a disparity in incomes between Husband and Wife. The evidence presented supported this inequality in the earning abilities of the parties because it showed that Husband's income was at least twice what Wife earned and that Husband's income fluctuated depending on performance while Wife's was dependent on her contract with the school corporation. We, therefore, conclude that the trial court did not abuse its discretion in ordering that Husband should be responsible for 65% and Wife for 35% of the children's education expenses.

## V. Valuation of RAINS Investment

[31] Husband contends that the trial court abused its discretion in its valuation of the investment in RAINS. He asserts that the purchase of the RAINS units was an investment, which was not worth anything at the time of the final hearing. Husband alleges that there was no support for the trial court's valuation of the RAINS units "in an amount equal to a 'loan' on the books for tax purposes." *Appellant's Br*. at 34 (citing *Shriner v. Sheehan*, 773 N.E.2d 833, 843 (Ind. Ct. App. 2002), *trans. denied*). He claims that no one testified that the units were worth the value of the booked loan, and therefore, the value used by the trial court was outside the range supported by the evidence. Husband thus maintains that the trial court abused its discretion in considering the units as a

loan, by valuing the units at full loan value, and for even including the units in the marital estate.

[32] A trial court's decision in ascertaining the value of property in a dissolution action is reviewed for an abuse of discretion. *Crider v. Crider*, 15 N.E.3d 1042, 1056 (Ind. Ct. App. 2014) (citing *Balicki v. Balicki,* 837 N.E.2d 532, 536 (Ind. Ct. App. 2005), *trans. denied*), *trans. denied.* Generally, there is no abuse of discretion if a trial court's chosen valuation is within the range of values supported by the evidence. *Id.* "'A valuation submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determination in that regard.'" *Alexander v. Alexander,* 927 N.E.2d 926, 935 (Ind. Ct. App. 2010) (quoting *Houchens v. Boschert,* 758 N.E.2d 585, 590 (Ind. Ct. App. 2001), *trans. denied*), *trans. denied.* When we review a trial court's valuation of property in a dissolution, we will neither reweigh the evidence nor judge the credibility of witnesses. *Crider*, 15 N.E.3d at 1056.

[33] The trial court in the present case found that the investment in RAINS was a shareholder loan repayable to Husband and set it off entirely to Husband in the amount of $292,196. *Appellant's App*. at 19. The evidence presented at the final hearing showed that Husband made an investment in RAINS in 2011 in the amount of $292,196 using marital funds without prior discussion with Wife; this investment made him a 50% owner of RAINS. This investment was listed in RAINS's books as a shareholder loan payable to Husband, and it was classified as a loan by the IRS for tax purposes. *Tr*. at 184-85. At the time of

the final hearing, RAINS had not repaid the loan and still owed the full amount of $292,196 payable to Husband. *Id*. at 197. The RAINS units did not provide any distributions during the marriage. *Id*. at 186-88, 194, 197. The evidence supported the trial court's determination that the amount loaned to RAINS represented a loan owing to Husband and should be valued in the amount of the unpaid loan, $292,196. Husband's arguments are a request for us to reweigh the evidence and judge witness credibility, which we cannot do. *Crider*, 15 N.E.3d at 1056. The trial court did not abuse its discretion in its valuation.

## VI. Tax Consequences of Property Division

[34] Husband claims that the trial court abused its discretion when it failed to properly consider the tax consequences of the property division. He contends that the trial court erred when it awarded the mutual fund portion of the TD account to him and ordered him to make an equalization payment to Wife of a certain amount in cash, instead of dividing the units of the mutual funds among the parties. Husband asserts that the trial court should have realized that, in order to make the equalization payment, he would be required to liquidate a portion of the mutual funds and incur negative capital gains taxes. He argues that, because the trial court was statutorily required to consider the tax consequences of the property disposition, the trial court abused its discretion in not doing so.

[35] Pursuant to Indiana Code section 31-15-7-7, the trial court, "in determining what is just and reasonable in dividing property under this chapter, shall consider the tax consequences of the property disposition with respect to the

present and future economic circumstances of each party." This statute, however, requires the trial court to consider only the direct or inherent and necessarily incurred tax consequences of the property disposition. *Knotts v. Knotts,* 693 N.E.2d 962, 968 (Ind. Ct. App. 1998), *trans. denied.* "Future tax consequences incident to the disposition of stock awarded one party are not a proper considerations [sic] before the trial court." *Id.* (citing *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1327 (Ind. Ct. App. 1991), *trans. denied*).

[36] Here, Husband did not offer any evidence as to what the actual or potential tax consequences would be if he sold a portion of the mutual funds. Additionally, given that it is not definite whether Husband will have to sell a portion of the mutual funds, or how much he may have to sell, the trial court was not required to consider possible future tax consequences incident to any possible sale. We, therefore, conclude that the trial court did not abuse its discretion.

## VII.  Division of Marital Property

[37] We will reverse a property distribution only if there is no rational basis for the award—that is, if the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom. *Luttrell v. Luttrell*, 994 N.E.2d 298, 301 (Ind. Ct. App. 2013), *trans. denied.* We do not reweigh the evidence, and we consider only the evidence favorable to the dissolution court's decision. *Id.* We will also reverse where the trial court has misinterpreted the law or has disregarded evidence of statutory factors. *Id.*

[38]     Husband argues that the trial court abused its discretion when it deviated from an equal division of the marital assets. He contends that the trial court failed to consider all of the statutory factors necessary to rebut the presumption of an equal division of property and that the evidence presented supported an equal division. Husband specifically asserts that it was an abuse of discretion to award Wife 55% of the marital estate based on his former earning ability because he claims that he no longer has superior earning ability.

[39]     The disposition of marital property is governed by Indiana Code section 31-15-7-4 and 31-15-7-5. There is a presumption of an equal division of property, but that presumption may be rebutted. Ind. Code § 31-15-7-5. This can include evidence of the following factors:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> (A) before the marriage; or
>
> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

*Id.* In dividing marital property, the trial court must consider all of these factors, but it is not required to explicitly address each one in every case. *Montgomery v. Faust,* 910 N.E.2d 234, 239 (Ind. Ct. App. 2009). To the contrary, we presume that the trial court considered each factor. *Id.* This is one of the strongest presumptions applicable to our consideration on appeal and must be overcome by a party challenging the trial court's division of property. *Eye v. Eye,* 849 N.E.2d 698, 701 (Ind. Ct. App. 2006).

[40] In the present case, the trial court found that, when the parties were first married, Wife worked full-time as a teacher while Husband finished his MBA and continued to do so for the six months after his graduation when he secured employment. *Appellant's App.* at 13. Wife was employed full-time until the birth of the parties' second child, when she stayed home as a full-time mother and homemaker for about ten years. *Id.* Although Wife later went back to work as a teacher, first part-time and then full-time, her income has always been less then Husband's by at least half. *Id.* at 13-14. At the time of the final hearing, Wife's income was $1,090 per week, and Husband's income was

$2,053 per week. *Id.* at 13. The trial court also found that Husband's income in insurance sales fluctuates from year to year based on his performance, while Wife's income as a teacher is subject to a contract with her school system. *Id.* at 13, 22. Therefore, although Husband's income had decreased in the recent years prior to the final hearing, it was still over twice the amount of Wife's income, and Husband has the ability to increase according to his performance. *Id.* at 14.

[41] The trial court also made findings that Husband withdrew a significant amount of funds from the TD account without Wife's knowledge or consent, totaling $470,000, of which over $93,000 could not be accounted for, to pay extraordinary expenses of the marriage. *Id.* at 18. Husband offered Exhibit E to account for this amount, but the trial court found that many of the payments shown in the exhibit were made prior to the funds being withdrawn and other payments were not for extraordinary expenses. *Id.* Therefore, the trial court found that Husband had failed to account for a portion of the withdrawals from the TD account in the amount of $93,344. *Id.* Additionally, the trial court found that Husband made an investment in RAINS in the amount of $292,196 without prior discussion with Wife that was classified as a shareholder loan of which none had been repaid and which did not provide any distributions during the marriage. *Id.* at 19.

[42] After making these findings, the trial court concluded that the presumption of an equal division had been rebutted and granted Wife 55% and Husband 45% of the marital estate. *Id.* at 22. The trial court properly considered the factors

and evidence showing that an unequal division would be just and reasonable. We conclude that Husband has failed to overcome our presumption that the trial court considered the proper factors and evidence. The trial court did not abuse its discretion in awarding Wife 55% of the marital estate.

## VIII. Attorney Fees

[43] Husband contends that the trial court abused its discretion in ordering him to pay 65% of Wife's attorney fees. Pursuant to Indiana Code section 31-15-10-1, a trial court may order a party in a dissolution proceeding to pay a reasonable amount of the other party's attorney fees, after considering the parties' resources, their economic condition, their ability to engage in gainful employment and earn income, and other factors bearing on the reasonableness of the award. *Ahls v. Ahls*, 52 N.E.2d 797, 803 (Ind. Ct. App. 2016) (citing *Troyer,* 987 N.E.2d at 1142-43). The trial court has broad discretion in awarding attorney fees. *Barton v. Barton*, 47 N.E.3d 368, 377 (Ind. Ct. App. 2015) (citing *Bessolo v. Rosario,* 966 N.E.2d 725, 733 (Ind. Ct. App. 2012), *trans. denied*), *trans. denied*. We will only reverse where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* "Further, 'the trial court need not give its reasons for its decision to award attorney's fees.'" *Bessolo*, 966 N.E.2d at 733 (quoting *Thompson v. Thompson,* 811 N.E.2d 888, 905 (Ind. Ct. App. 2004), *trans. denied*).

[44] Husband argues that the trial court's award of attorney fees to Wife was against the logic and effect of the circumstances before it. He specifically claims that

the purpose of awarding attorney fees in a dissolution is to make sure a party who could not otherwise afford an attorney is able to retain representation, *see Ahls*, 52 N.E.3d at 803, and that because Wife was able to retain counsel who could competently represent her, she should not have been awarded attorney fees. He further contends that Wife was awarded significant liquid assets in the Decree such that she could afford to pay her attorney fees. Husband also argues that the trial court should not have used his alleged superior financial position as support to justify an award of attorney fees to Wife.

[45] Here, the trial court concluded that "[g]iven the disparity of earnings of the parties," Husband should pay 65% of the total amount of attorney fees and costs of the parties and that Wife should be responsible for 35% of attorney fees and costs. *Appellant's App*. at 28. Although the trial court was not required to cite to any reasons for its decision to award attorney fees, *see Bessolo*, 966 N.E.2d at 733, the trial court based its award on the disparity in incomes between Husband and Wife. The evidence presented supported this inequality in the earning abilities of the parties because it showed that Husband's income was at least twice what Wife earned and that Husband's income fluctuated depending on performance while Wife's was dependent on her contract with the school corporation. We, therefore, conclude that the trial court did not abuse its discretion in ordering that Husband should be responsible for 65% and Wife for 35% of the total attorney fees and costs.

[46] Affirmed in part, reversed in part, and remanded.

May, J., and Crone, J., concur.