# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 11 2020, 8:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Cody Cogswell
Joshua A. Martin
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Sarah T. Baker
Brooke Jones Lindsey
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Xuejun Tang, *Appellant-Defendant,* <br><br> v. <br><br> Biru Zhang, *Appellee-Plaintiff.* | June 11, 2020 <br><br> Court of Appeals Case No. 19A-DC-2452 <br><br> Appeal from the Hamilton Circuit Court <br><br> The Honorable Paul A. Felix, Judge <br><br> Trial Court Cause No. 29C01-1706-DC-5869 |

**Tavitas, Judge.**

## Case Summary

[1] Jason Xuejun Tang ("Husband") appeals the trial court's order regarding the dissolution of his marriage to Biru Zhang ("Wife"). We affirm.

# Issues

Husband raises five issues, which we restate as:

    I.      Whether the trial court properly ordered an unequal division of the marital estate.

    II.     Whether the trial court properly determined the value of Husband's E-Trade account.

    III.    Whether the trial court properly ordered Husband to pay a portion of Wife's attorney fees.

    IV.    Whether the trial court properly calculated Husband's child support obligation.

    V.     Whether the trial court properly declined to award Husband a credit for expenses he paid pursuant to the trial court's provisional order.

# Facts

Husband and Wife were married in August 2006, and they had one child, R.T., ("Child") in April 2008. Husband has a doctorate in biophysics and works as a scientist at Eli Lilly. Wife obtained a master's degree in graphic design in 2012. When the couple moved to Indiana in 2012, Wife stayed home to care for the Child. Wife later began working part-time as a patient service representative for a physician.

On June 21, 2017, Wife filed a petition for dissolution of marriage. In September 2017, the trial court entered a provisional order that provided, in part:

> Husband shall timely pay expenses related to the Marital Residence, including the utilities, maintenance, property taxes, homeowners' association dues, and homeowners' insurance. Husband shall maintain the families' medical/vision/dental health insurance, life insurance, and auto insurance in existence as of the date of filing and shall make payments on any outstanding credit card debt in his name individually. Credit to Husband for making said payments will be considered at final disposition of the matter.

Appellant's App. Vol. II p. 49. The order also provided: "The Court finds that Husband's Child Support obligation is $287.00 per week, which shall be reduced by $87.00, for a net weekly payment of Child Support of $200.00, to credit Husband from covering the expenses related to the Marital Residence during the pendency of this proceeding." *Id.* at 50.

[5] In October 2018, Wife filed a petition to modify the provisional child support order. On November 29, 2018, the trial court signed the parties' agreed entry. As part of the agreed entry, Husband agreed to advance Wife $75,000.00 from the marital estate. The parties reserved their right "to argue the allocation as payment of attorney fee award, versus as an advance of property settlement at the final hearing." *Id.* at 58.

[6] On August 12, 2019, the trial court entered a final decree of dissolution of the parties' marriage. At the time of the final hearing, Husband was sixty-two years old, and Wife was forty-three years old. The trial court ordered the parties to share joint legal custody of the Child with Wife having primary physical

custody and Husband having parenting time. The trial court ordered Husband to pay child support as follows:

> a. Three Hundred and Twenty-Two Dollars ($354.00) [sic] per week from October 19, 2018 through February 28, 2019;
>
> b. Four Hundred and Twenty-Eight Dollars ($428.00) per week from March 1, 2019 through June 11, 2019; and
>
> c. Four Hundred and Twenty-Eight Dollars ($428.00) + 7.4% of Husband's gross irregular income over $6,915.89 per week beginning June 11, 2019.

*Id.* at 23. The child support orders included a parenting time credit for 126-130 overnights for each time period. The trial court also found that Husband had a child support arrearage of $11,168.72 as of June 11, 2019.

[7] The trial court found that Wife rebutted the presumption in favor of an equal division of marital property. The trial court concluded: (1) the disputed marital property was acquired by the joint efforts of both Husband and Wife; (2) Husband acquired certain assets prior to the date of the marriage; (3) Husband's economic circumstances are considerably better than Wife's economic circumstances; (4) Husband distributed at least $10,000.00 to family members after the petition for dissolution was filed; and (5) Husband's income is more than ten times Wife's income. The trial court ordered that Wife receive 55% of the marital estate and that Husband receive 45% of the marital estate. The trial court ordered Husband to pay a cash equalization payment of $240,914.00 to

Wife. Regarding attorney fees, the trial court ordered Husband to pay $85,000.00 toward Wife's attorney fees.

[8] Wife filed a verified request for clarification of the final order, and on August 28, 2019, the trial court entered an order clarifying its final order. Specifically, the trial court clarified the attorney fee award and also ordered Husband to pay a revised cash equalization payment of $325,914.00.

[9] Husband filed a motion to correct error. Husband argued that the trial court erred in: (1) dividing the marital assets; (2) valuing several assets; (3) calculating child support; and (4) ordering Husband to pay Wife's attorney fees. On October 2, 2019, the trial court granted the motion to correct error and revised Husband's child support arrearage to $5,784.72. The trial court denied the remainder of Husband's motion to correct error. Husband now appeals.

## Analysis

[10] Husband appeals the trial court's dissolution decree. The trial court entered sua sponte findings of fact and conclusions thereon to accompany its dissolution decree.[1] "In such a situation, the specific factual findings control only the issues that they cover, while a general judgment standard applies to issues upon which

---

[1] The Chronological Case Summary ("CCS") indicates that Wife filed a request for special findings of fact and conclusions thereon on May 20, 2019. Wife, however, later withdrew her request. *See* Tr. Vol. II pp. 81-82

there are no findings." *Fetters v. Fetters*, 26 N.E.3d 1016, 1019 (Ind. Ct. App. 2015), *trans. denied*.

[11]     When reviewing the accuracy of findings entered sua sponte, we first consider whether the evidence supports them. *Id.* at 1020. We will disregard a finding only if it is clearly erroneous, meaning the record contains no facts to support it either directly or by inference. *Id.* We will not reweigh the evidence or judge witness credibility. *Id.* Next, we consider whether the findings support the judgment. *Id.* "A judgment also is clearly erroneous if it relies on an incorrect legal standard, and we do not defer to a trial court's legal conclusions." *Id.*

[12]     If one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record. *Id.* at 1019. "We may affirm a general judgment with sua sponte findings upon any legal theory supported by the evidence introduced at trial." *Id.* at 1019-20. We may look both to other findings and beyond the findings to the evidence in the record to determine if the result is against the facts and circumstances before the court. *Id.* at 1020.

[13]     "Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). Trial courts are, thus, "enabled to assess credibility and character through both factual testimony and

intuitive discernment. . . ." *Id.* "[O]ur trial judges are in a superior position to ascertain information and apply common sense . . . ." *Id.*

### I. Unequal Division

[14] Husband argues the trial court abused its discretion by awarding an unequal division of the marital estate. The division of marital assets is within the trial court's discretion, and we will reverse a trial court's decision only for an abuse of discretion. *Smith v. Smith*, 136 N.E.3d 275, 281 (Ind. Ct. App. 2019). The party challenging the trial court's division of marital property must overcome a strong presumption that the trial court considered and complied with the applicable statute. *Id.* This presumption is one of the strongest presumptions applicable to our consideration on appeal. *Id.* On review, we will neither reweigh evidence nor assess the credibility of witnesses, and "we will consider only the evidence most favorable to the trial court's disposition of the marital property." *Id.*

[15] In dissolution proceedings, the trial court is required to divide the property of the parties "in a just and reasonable manner[.]" Ind. Code § 31-15-7-4(b). This division of marital property is a two-step process: (1) the trial court must ascertain what property is to be included in the marital estate; and (2) the trial court must fashion a just and reasonable division of the marital estate. *Smith*, 136 N.E.3d at 281. "The court shall presume that an equal division of the marital property between the parties is just and reasonable." Ind. Code § 31-15-7-5. This presumption, however, "may be rebutted by a party who presents

relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable":

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

> (2) The extent to which the property was acquired by each spouse:

>> (A) before the marriage; or

>> (B) through inheritance or gift.

> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

> (5) The earnings or earning ability of the parties as related to:

>> (A) a final division of property; and

>> (B) a final determination of the property rights of the parties.

*Id.* We consider the statutory factors together in determining what is just and reasonable without giving any one factor special weight. *Smith*, 136 N.E.3d at

282. A party challenging the trial court's decision on appeal must overcome a strong presumption that the trial court acted correctly in applying the statute. *Id.*

[16] In making its division of marital assets, the trial court made extensive findings of fact and conclusions thereon. The trial court found:

> a. Contribution of Each Spouse. Husband contributed economically to the acquisition of the parties' property and Wife contributed through her support of Husband's career and her caretaking of [the Child], and marital residence. The Court finds the parties contributed equally to the acquisition of property. Wife assumed and carried out all responsibilities of raising [the Child] while Husband pursued his career at Eli Lilly. Wife performed all the duties associated with managing the marital residence; including, but not limited to, grocery and household shopping, cleaning, meal preparation, and laundry. . . . The disputed marital property was acquired by the joint efforts of Husband and Wife.

> b. The Extent to Which Property was Acquired before The Marriage (or Through Inheritance). It is clear Husband acquired certain marital assets prior to the date of marriage. Namely, Fidelity Roth IRA . . . . and Fidelity Traditional IRA . . . . Husband brought into the marriage his Wyeth/Pfizer pension. Husband was employed at Wyeth/Pfizer prior to and during a portion of the parties' marriage. Husband had the pension evaluated by Dan Andrews as to the amount that accrued during the marriage by way of a coverture fraction. The Court finds the present-day value of the Wyeth/Pfizer pension to be $362,464 but that only $52,738.50 was accumulated during the parties' marriage. However, Husband was unemployed on two occasions during the parties' marriage. The first time when [the Child] was born and again from 2009 through 2011 (the date

Husband was hired at Eli Lilly). Husband was in the process of purchasing the Haikou property when the parties married. Other than a down payment, Husband completed the purchase after the date of the parties' marriage. The Court does concludes [sic] that this evidence works against a finding that Wife should get a larger percentage of the marital estate.

c. The Economic Circumstances of Each Spouse at the Time of Disposition of The Property. Husband's economic circumstances are considerably superior to Wife. Husband has a base salary of $188,425.00 in addition to incentive bonuses and long-term incentive compensation in the form of Eli Lilly Restricted Stock Units and Performance Shares/Units. As of April 30, 2019, said additional compensation has already exceeded $171,200.94. Wife, in comparison, currently makes $13.79 per hour, with potential for an annual bonus of $560. These facts lead convincingly toward an unequal division of the estate in [Wife's] favor.

d. Dissipation of Assets. Husband, without Wife's knowledge or consent, took at least $10,000.00 to China after the DOF. It is unknown how much money Husband has taken to China, but Husband testified that he took at least $10,000.00 in cash and distributed it to various family members. Husband argued at the Final Hearing that Wife dissipated assets prior to the Date of Filing by withdrawing $15,000.00 from her Chase Bank Acct. #2950 on July 15, 2016. Husband's allegations are meritless.

e. Earnings or Earning Ability of the Parties. The parties have disparate earning ability. Husband is a Research Fellow at Eli Lilly and Company. Husband has a substantial source of income, making more than 10 times the amount Wife makes, without any consideration of Husband's irregular (variable) income. Wife is a part-time employee with Community Health Network as a patient representative. Beginning in August 2019, Wife will begin working 36 hours a week at her employment and

intends to do so. Wife earned a Master of Arts Degree in Graphic Design. Her opportunities to use this degree to her financial gain were foregone [sic] in order to relocate to Indianapolis and Husband's desire for Wife to stay at home.

Appellant's App. Vol. II pp. 28-31 (footnotes omitted). The trial court concluded that only one factor worked in Husband's favor and that Wife met her burden to rebut the presumption of an equal division of the marital estate. The trial court then divided the marital estate with Wife receiving 55% and Husband receiving 45%.

[17] According to Husband, the trial court failed to properly consider assets that Husband acquired before the marriage, including: "the Yeshiva Basic Plan, the Canadian RRSP Dynamic Fund, and the Canadian RRSP CIBC"; the Haikou City, China, property; the Chase Bank savings account; and the Bank of America checking account. Appellant's Br. p. 26.

[18] As for the Haikou City, China, property, the trial court, in fact, discussed this property when making findings on Husband's premarital assets. Wife presented evidence that some of the purchase price of the property was paid during their marriage. Wife also testified that, although Husband's parents lived in the house, it was purchased for Husband and Wife's retirement. Husband, on the other hand, argues that the property was purchased as a gift for his parents. Husband's argument is merely a request that we reweigh the evidence, which we cannot do. *See Smith*, 136 N.E.3d at 281.

[19]    Regarding the remainder of the property that Husband contends was excluded from the list of premarital assets, we begin by noting that Husband provided Wife with many documents only days before the final hearing. During the final hearing, Wife repeatedly objected to the admission of those documents. The trial court sustained the objections to most of the documents because they were not timely provided during discovery and because the values presented on the documents did not represent the values of the accounts on the date of marriage. Although the trial court gave Husband an opportunity to request a continuance because of the late discovery issues, Husband did not make such a request.

[20]    The trial court addressed this issue in its findings of fact and conclusions thereon and found:

> Although Husband argued certain marital assets were premarital from the onset of this matter (and despite numerous requests from Wife/Wife's counsel); Husband did not provide any documentation to support his claims until June 3, 2019 at 3:24 PM. Additional previously unprovided documentation from Husband to support his claims was provided at 5:17 PM on June 10, 2019 (the day before the first day of the Final Hearing).

Appellant's App. Vol. II p. 29 n.3.

[21]    In discussing the Chase Bank savings account and the Bank of America checking account, Husband argued that these funds were originally in an EmigrantDirect.com account and HSBC accounts and that he had these accounts before his marriage to Wife. Husband attempted to introduce documentation of the value of these accounts near the time of the marriage as

Exhibit M and Exhibit N. The trial court, however, did not admit those exhibits because Husband failed to timely provide the documents during discovery. Similarly, Husband attempted to introduce evidence of the June 30, 2006 value of the CIBC retirement investment account and the Dynamic Funds RRSP account as Exhibit O and Exhibit P. The trial court did not admit either exhibit. Husband did not make an offer of proof regarding any of these documents; as such, we do not have those documents on appeal. Given Husband's discovery violations and failure to introduce evidence regarding the value of these accounts at the time of the marriage, we cannot say the trial court abused its discretion by not mentioning these accounts in its list of premarital assets.

[22] The trial court did admit Exhibit U, which detailed the value of the Yeshiva retirement savings account between April 1, 2006, and June 30, 2006.[2] The trial court, however, did not "know how much weight it has, if any" because the value was not reflective of the value on the date of marriage. Tr. Vol. III p. 25. Regardless, however, the trial court should have included the Yeshiva account in its list of premarital assets.[3]

---

[2] The account had a value of $47,182.22 on June 30, 2006, and the trial court valued the account at $73,464.00 in the dissolution decree.

[3] In his reply brief, Husband also argues that the trial court erred by failing to consider a Fidelity account ending in 4354 as a premarital asset. Although Husband mentions this account in his Appellant's Brief, Husband did not argue the trial court erred by failing to consider the account as a premarital asset. In his reply brief, Husband also argues that the trial court erred by including portions of his Wyeth/Pfizer pension, which was subject to a coverture calculation, as marital assets. Husband did not make this argument in his

[23] Finally, Husband also argues that the trial court failed to consider that Husband is nearing retirement and that Wife has many years left until retirement. Husband testified that he plans to retire in two to two and one-half years. This argument fails to take into account the extreme disparity in Husband's and Wife's incomes. Husband's earning capacity is significantly more than Wife's earning capacity. Husband further speculates that he will have to liquidate some retirement assets to pay the equalization payment, which will cause him to incur additional taxes and penalties and further reduce his share of the marital estate. This argument, however, is mere speculation.

[24] Even if the trial court should have included the Yeshiva account as a premarital asset, we do not find this to be reversible error. We note that the trial court considered the fact that Husband entered the marriage with significant assets and concluded that this factor weighed in Husband's favor. The trial court, however, found that the other factors weighed in Wife's favor. Husband's argument is merely a request that we weigh the fact that he had significant premarital assets more heavily than the other factors here, including the extreme difference in incomes of the parties and the fact that Wife stayed home to care for the Child, resulting in foregone opportunities to utilize her degree. We, however, consider the statutory factors together in determining what is just

Appellant's Brief. Arguments raised for the first time in a reply brief are waived. *See, e.g., Felsher v. University of Evansville*, 755 N.E.2d 589, 593 n.6 (Ind. 2001) (holding that an argument was waived because it was raised for the first time in the reply brief); *see also* Ind. App. R. 46(C) ("No new issues shall be raised in the reply brief"). Accordingly, these arguments are waived.

and reasonable without giving any one factor special weight. *Smith*, 136 N.E.3d at 282. Given these circumstances, the trial court did not abuse its discretion in finding that Wife rebutted the presumption of an equal division of marital assets. The trial court did not abuse its discretion by awarding Wife 55% of the marital assets. *See, e.g., In re Marriage of Marek*, 47 N.E.3d 1283 (Ind. Ct. App. 2016) (holding that wife rebutted the presumption of an equal division where she received a significant inheritance that was kept separate from other marital assets, she had been out of the workforce for a significant amount of time, and husband's income was significantly higher than wife's income), *trans. denied*.

## II. Valuation of Marital Assets

[25] Husband argues that the trial court abused its discretion in valuing the E-Trade brokerage account. Wife filed her petition for dissolution of marriage on June 21, 2017. The parties presented evidence that the E-Trade account was valued at $7,105.40 on June 21, 2017, and $15,614.48 on June 30, 2017, due to market changes. The trial court valued the account at $15,614.00. According to Husband, the trial court abused its discretion by using the June 30, 2017 value.

[26] After identifying the marital assets, the trial court has discretion to set any date between the date of filing the dissolution petition and the date of the hearing for their valuation. *Goodman v. Goodman*, 94 N.E.3d 733, 747 (Ind. Ct. App. 2018), *trans. denied*. "The selection of the valuation date for any particular asset has the effect of allocating the risk of change in the value of that asset between the

date of the valuation and date of the hearing." *Id.* We entrust this allocation to the discretion of the trial court. *Id.*

[27] We addressed a similar issue in *Webb v. Schleutker*, 891 N.E.2d 1144, 1152 (Ind. Ct. App. 2008). There, the wife filed a petition for dissolution of marriage on August 9, 2005. The value of the account on the date of filing was $5,615.07, and the value on August 31, 2005, was $14,279.97. The trial court valued the account at $14,279.00. We held that the trial court had "the authority to select any date between the date of filing the dissolution petition and the date of the final hearing as the date of valuation of marital assets," and the trial court did not abuse its discretion in valuing the account. *Webb*, 891 N.E.2d at 1152.

[28] Similarly, here, the trial court valued the E-Trade account based upon its value nine days after Wife's petition for dissolution was filed. We cannot say that the trial court abused its discretion. *See id*.

### III. Attorney Fees

[29] Next, Husband argues that the trial court abused its discretion by ordering him to pay a portion of Wife's attorney fees. Under Indiana Code Section 31-15-10-1, a trial court may order a party in a dissolution proceeding to pay a reasonable amount of the other party's attorney's fees. *Eads v. Eads*, 114 N.E.3d 868, 879 (Ind. Ct. App. 2018). The court has broad discretion in deciding whether to award attorney's fees. *Id.*

[30] In determining whether an award of attorney fees in a dissolution proceeding is appropriate, trial courts should consider the parties' resources, their economic

condition, their ability to engage in gainful employment and earn income, and other factors bearing on the reasonableness of the award. *Id.* A party's misconduct that directly results in additional litigation expenses may also be considered. *Id.* Consideration of these factors promotes the legislative purpose behind the award of attorney fees, which is to ensure that a party who would not otherwise be able to afford an attorney is able to retain representation. *Id.* When one party is in a superior position to pay fees over the other party, an award is proper. *Id.*

[31] Regarding attorney fees, the trial court found:

> Pursuant to Indiana Code Section 31-15-10-1 and the disparate earning ability and resources available to the parties, an award of attorney fees is justified. While the parties will each have assets upon dissolution, given Husband's significantly greater earning ability, it is proper for this Court to order Husband to contribute to Wife's attorney fees. Husband's actions have directly caused Wife to incur unnecessary attorney fees. *See* Petitioner's Exhibits 79, 80, 83, 84. Wife incurred a total of $125,033.96 in attorney fees and litigation expenses through the final hearing. Husband shall pay $85,000.00 toward Wife's attorney fee[s]. Husband shall be given credit for $10,000 preliminary fees he has paid to Katzman & Katzman P.C., pursuant to the Court's Order on Preliminary and Contempt issues entered 9/18/2017; along with credit for the $75,000 advanced by Husband pursuant to Agreed Entry approved 11/29/18 and file-marked 11/30/2018, for a total of $85,000 credit against total preliminary and final attorney fees Wife incurred.

Appellant's App. Vol. II p. 40.

[32] The trial court later clarified the order and found:

> Wife incurred a total of $125,033.96 in attorney fees and litigation expenses through the final hearing. Husband shall pay $85,000.00 toward Wife's attorney fees. Wife's attorney fee award shall be deemed paid in full as Husband shall be given credit for $10,000.00 paid to Katzman & Katzman, P.C. pursuant to the Court's Order on Preliminary and Contempt Issues entered 9/18/2017; along with credit for the $75,000.00 advanced by Husband pursuant to the Agreed Entry approved 11/29/18 and file-marked 11/30/2018, for a total of $85,000.00 credit against total preliminary and final attorney fees Wife incurred.

*Id.* at 45.

[33]    On appeal, Husband argues that Wife incurred unreasonable and excessive attorney fees. Husband, however, only identifies the following fees as excessive: the interpreter fees; the fact that two attorneys attended the depositions and final hearing for Wife; and 1¾ hours of attorney fees during the depositions during breaks and before the start of the depositions. According to Husband, the trial court failed "to conduct a full analysis of the reasonableness of [Wife's] counsel's attorney fees" pursuant to Indiana Professional Conduct Rule 1.5(a). Appellant's Br. p. 37. Wife, however, contends that Husband directly caused her to incur unnecessary attorney fees because he failed to timely respond to discovery requests and failed to disclose assets.

The parties' dissolution proceedings have been pending since June 21, 2017, and both parties incurred significant attorney fees.[4] The trial court specifically found that "Husband's actions have directly caused Wife to incur unnecessary attorney fees," and Wife's attorney testified that Husband's actions caused at least an additional $29,000.00 in attorney fees. Appellant's App. Vol. II p. 40. Husband has many more resources than Wife, Husband's economic condition is better than Wife's, and Husband's ability to earn an income is many times greater than Wife's ability. Given these conditions, the trial court did not abuse its discretion by ordering Husband to pay a significant portion of Wife's attorney fees. *See, e.g., Goodman*, 94 N.E.3d at 751 (holding that the disparity of the parties' earnings, the husband's dissipation of marital assets, and husband's "misconduct that directly result[ed] in additional litigation expenses" justified the trial court's decision to award attorney's fees to the wife).

## *IV. Child Support*

Husband argues that the trial court erred in calculating the child support owed by Husband. "A trial court's calculation of child support is presumptively valid." *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). A trial court's decision regarding child support will be upheld unless the trial court has abused its discretion. *Martinez v. Deeter*, 968 N.E.2d 799, 805 (Ind. Ct. App. 2012). A trial court abuses its discretion when its decision is clearly against the logic and

---

[4] Husband presented evidence that his attorney fees and other litigation expenses were $87,292.00. Wife presented evidence that she incurred $118,214.35 in attorney fees.

the effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

### A. Parenting Time

[36] Husband first argues that the trial court erred in giving him a parenting time credit of 126-130 overnights. Husband contends that he is entitled to at least 155 days of parenting time credit. Husband, however, submitted three proposed child support worksheets to the trial court—one giving Husband credit for 130 overnights with Wife having primary physical custody; one giving Husband credit for 182 overnights under a joint physical custody arrangement; and one giving Wife credit for 104 overnights with Husband having primary physical custody. *See* Respondent's Exhibits H, I, and J.

[37] Although Husband now argues that he was entitled to 155 days of parenting time credit, he did not make that argument to the trial court; instead, Husband proposed a parenting time credit of 126-130 days, which the trial court used. A party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct. *Evans v. Evans*, 766 N.E.2d 1240, 1244 (Ind. Ct. App. 2002). Invited error is not subject to review by this court. *Id.* Because the error complained of was invited by Husband, his claim is not subject to our review.

### B. Voluntary Underemployment

[38] Next, Husband argues that Wife is voluntarily underemployed and that the trial court should have imputed income to her when calculating child support. Trial

courts may impute income to a parent for purposes of calculating child support upon determining that he or she is voluntarily unemployed or underemployed. *Sandlin v. Sandlin*, 972 N.E.2d 371, 375 (Ind. Ct. App. 2012). Indiana Child Support Guideline 3(A)(3) provides:

> If a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's employment and earnings history, occupational qualifications, educational attainment, literacy, age, health, criminal record or other employment barriers, prevailing job opportunities, and earnings levels in the community.

[39] Husband sought to impute income of $600.00 per week to Wife because she was not working full-time. On appeal, Husband argues that Wife should have been able to find employment as a graphic designer because she volunteered at the Indy Asian American Times for six years.[5]

[40] Wife presented evidence that she has a master's degree in graphic design. Upon moving to Indianapolis in 2012, however, she stayed home to care for the

---

[5] In his reply brief, Husband states: "[Wife] testified that she did not work more than the twenty-six hours she receives at Community Health, due to her volunteer work." Appellant's Reply Br. p. 18. Wife, however, testified that she worked part-time at her current employment because the employer only needed a part-time employee. Wife then testified that she had been unsuccessful in finding employment as a graphic designer. When asked by Husband's counsel, "why couldn't you get a job at a Chinese restaurant every other weekend?," Wife responded that she did volunteer work at the newspaper. Tr. Vol. II p. 228. Contrary to Husband's argument, Wife did not testify that she could not work more than twenty-six hours a week due to her volunteer work.

Child.  She later became employed part-time as a patient service representative at a physician's office.  Wife anticipated increasing her work hours to at least thirty-six hours a week beginning in August 2019.  Wife testified that she looked for employment as a graphic designer, but she was unsuccessful in finding such employment.  Wife also testified that she had volunteered with the Indy Asian American Times since 2012 to use her art design skills.

[41] In the final decree, the trial court noted that Wife's opportunities to use her master's degree "to her financial gain were foregone [sic] in order to relocate to Indianapolis and Husband's desire for Wife to stay at home."  Appellant's App. Vol. II p. 31 (footnote omitted).  The trial court then declined to impute income to Wife in calculating child support.  Wife presented evidence that she struggled to find employment as a graphic designer given her time out of the workforce.  Wife was, however, increasing her hours at her current employment and continuing to volunteer for the newspaper to gain design experience.  Given Wife's circumstances, we cannot say that the trial court abused its discretion in declining to impute income to Wife.  *See, e.g., Sandlin*, 972 N.E.2d at 376 (holding that the trial court did not abuse its discretion by declining to impute income to the wife in determining child support).

## *V.  Credit*

[42] Husband also argues that the trial court erred by failing to award him a credit for expenses he paid pursuant to the provisional order.  According to Husband, he paid $32,103.00 in court-ordered provisional payments from July 2017 to June 2019.  Husband contends the payments were for health, life, and auto

insurance, property taxes, utilities, home insurance, homeowners' association fees, and home repairs.

[43] Husband's argument is a challenge to the trial court's division of marital assets. The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of that discretion. *Priore v. Priore*, 65 N.E.3d 1065, 1073 (Ind. Ct. App. 2016), *trans. denied*. We may not reweigh the evidence or assess the credibility of the witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

[44] The trial court denied Husband's requested credit for the expenses he paid during the proceedings. The trial court noted that Husband was requesting "credit for payment of [Child's] childcare and health insurance which he is already receiving credit for in the Provisional child support order." Appellant's App. Vol. II p. 41 n.7. The trial court also noted that the Child's "childcare was even less than the credit provided." *Id.* Husband also fails to note that, in the provisional order, Husband's weekly child support payment was reduced by $87.00 to "credit Husband for covering the expenses related to the Marital Residence during the pendency of the dissolution proceedings." *Id.* at 22 n.1. Husband also has significantly greater income and earning ability than Wife. Under these circumstances, we cannot say that the trial court abused its discretion by denying Husband's request for a credit. *See, e.g., Priore*, 65 N.E.3d at 1074 (holding that the trial court did not abuse its discretion by denying the

husband's request for a credit for expenses he paid during the dissolution proceedings because "Husband likely, as the party with higher earning ability, would have been ordered to pay many of these household expenses provisionally during the dissolution proceedings").

## Conclusion

The trial court did not abuse its discretion when it concluded that Wife rebutted the presumption in favor of an equal division of marital assets. The trial court did not abuse its discretion in valuing the E-Trade account or by ordering Husband to pay a portion of Wife's attorney fees. The trial court did not abuse its discretion in calculating child support owed by Husband or by denying Husband's request for a credit for expenses he paid pursuant to the trial court's provisional order. We affirm.

Affirmed.

Riley, J., and Mathias, J., concur.